Humberto M. Guizar, Esq., (SBN 125769)
Christian Contreras, Esq. (SBN 330269)
**GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
3500 W. Beverly Blvd.
Montebello, California 90640
Tel: (323) 725-1151
Fax: (323) 597-0101
Attorneys for Plaintiff, LISA VARGAS

**RICKEY IVIE (S.B.N.: 76864)**
rivie@imwlaw.com
**ANTONIO K. KIZZIE (S.B.N.: 279719)**
akizzie@imwlaw.com
**JACK F. ALTURA (S.B.N.: 297314)**
jaltura@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS, APLC**
444 S. Flower Street, 18th Floor
Los Angeles, CA 90017-2919
(213) 489-0028; Fax (213) 489-0552
Attorneys for Defendants, County of Los Angeles, et.al.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

LISA VARGAS,

   Plaintiff,

  v.

COUNTY OF LOS ANGELES,
COUNTY OF LOS ANGELES,
NIKOLIS PEREZ, and JONATHAN
ROJAS

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.: 2:19-cv-03279-PSG (ASx)**
Hon: Philip S. Gutierrez
United States District Judge

**DISCOVERY MATTER**

**JOINT DISCOVERY MOTION TO COMPEL DEFENDANT COUNTY OF LOS ANGELES TO PRODUCE THE PROPER PMK REGARDING THE BANDITOS & REQUEST FOR MONETARY SANCTIONS**

**[Declaration of Humberto Guizar, and Exhibits; [Proposed] Order; filed concurrently herewith]**

i
**JOINT DISCOVERY MOTION**

1

2
**[Declarations of Antonio K. Kizzie**
3
**and Sgt. Paul Valle, and attached**
**Exhibits in Opposition and Request**
4
**for Monetary Sanctions; [Proposed]**
**Order; filed concurrently herewith]**
5

6
Date: September 1, 2020
Time: 10:00 am
7
Crtrm: 540

8        The following parties appeared through their respective Counsels and

9   participated in the preparation of this Joint Discovery Motion regarding a discovery

10  dispute over.

11

| Party | Counsel |
|---|---|
| Plaintiff, LISA VARGAS | Humberto Guizar<br>Christian Contreras<br>GUIZAR, HENDERSON &<br>CARRAZCO L.L.P.<br>18301 Irvine Blvd. Tustin, CA 92780<br>Phone No.: (714) 541-8600<br>Fax No.: (714) 541-8601 |
| Defendants, COUNTY OF LOS ANGELES OF LOS ANGELES, NIKOLIS PEREZ, and JONATHAN ROJAS | **RICKEY IVIE**<br>rivie@imwlaw.com<br>**ANTONIO K. KIZZIE**<br>akizzie@imwlaw.com<br>**JACK F. ALTURA**<br>jaltura@imwlaw.com<br>**IVIE McNEILL WYATT**<br>**PURCELL and DIGGS, APLC**<br>444 S. Flower Street, Suite 1800<br>Los Angeles, California 90071<br>Tel.   (213) 489-0028<br>Fax   (213) 489-0552 |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO THE HONORABLE ALKA SAGAR, UNITED STATES**
2  **MAGISTRATE JUDGE:**

3      Pursuant to Local Rule 37-2.1, the parties hereby submit this joint stipulation
4  in support of Plaintiff LISA VARGAS's motion to compel defendant County of Los
5  Angeles to produce documents.

6      To fully comply with Local Rule 37-1, Plaintiffs' counsel served a meet and
7  confer letter as follows, on August 6, 2020. Please see Plaintiff's Exhibit [A]. The
8  parties met and conferred via telephone on August 13, 2020.

9      The parties were unable to resolve the discovery dispute as detailed in this joint
10  stipulation. Pursuant to Local Rule 37-2.1, a copy of the order establishing the current
11  case schedule with the current discovery cut-off date is attached as Exhibit [B] to the
12  declaration of Humberto Guizar filed herewith.

13      The operative complaint in this matter is attached hereto as Exhibit [C].
14  Respectfully submitted,

15  Dated: August 25, 2020          **GUIZAR, HENDERSON & CARRAZCO, LLP**

16

17                                  By: /s/ _____
18                                        HUMBERTO GUIZAR
                                          Attorneys for Plaintiff
19                                        LISA VARGAS

20

21  Dated:  August 24, 2020        **IVIE McNEILL WYATT PURCELL &**
22                                  **DIGGS, APLC**

23                                  By:   **/s/** *Antonio K. Kizzie*
24                                        **RICKEY IVIE**
                                          **ANTONIO K. KIZZIE**
25                                        **JACK F. ALTURA**
                                          **Attorneys for Defendant,**
26                                        **COUNTY OF LOS ANGELES**

27

28

# TABLE OF CONTENTS

Page No.:

I.   PLAINTIFF'S INTRODUCTORY STATEMENT,
     SPECIFICATION OF ISSUS IN DISPUTE …………...……… 1-6

II.  DEFENDANT COUNTY OF LOS ANGELES,
     INTRODUCTORY STATEMENT, SPECIFICATION OF ISSUES IN
     DISPUTE ………………………………………….…………………6-11

III. PLAINTIFF'S ARGUMENT FOR COMPELLING COUNTY OF
     LOS ANGELES TO PRODUCE DOCUMENTS…………...…12-20

IV.  DEFENDANT COUNTY OF LOS ANGELES' ARGUMENT FOR
     NOT PRODUCING DOCUMENTS…………….…...……….. 20-42

V.   PLAINTIFF'S CONCLUSION …………………….………...…..42

VI.  DEFENDANT'S CONCLUSION …………………..………….42

# I. **PLAINTIFF'S INTRODUCTORY STATEMENT AND SPECIFICATION OF ISSUS IN DISPUTE**

## A. Introduction

This is a civil rights action which includes federal and state law claims, arising from the shooting and killing of decedent Anthony Vargas. Anthony Vargas was shot and killed by defendants Los Angeles County Sheriff Deputies, Nikolis Perez, and Jonathan Rojas. These defendants shot Anthony Vargas a total of thirteen (13) times after deputies fired sixteen (16) gun shots at Mr. Vargas. Ten (10) of the shots struck Mr. Vargas in the back and two (2) shots struck the back of Anthony's head. Plaintiff also has a claim for municipal liability based on the fact there was a deputy gang, "Los Banditos" controlling the day to day activities of the East Los Angeles Sheriff's precinct, the precinct that services Nueva Maravilla Housing Community in East Los Angeles, which is where Anthony Vargas was killed.

This case has been litigated extensively. Plaintiff has taken the depositions of the defendant deputies. Both deputies gave two (2) completely different accounts as to how the shooting occurred. Defendant Rojas testified he fired when he saw Anthony laying on his side allegedly with a gun in his hand. Defendant Perez testified he fired his gun while Anthony was on his knees and did not see a gun. However, Perez claims he fired because he heard Defendant Rojas scream out "gun."

The objective evidence disproves the deputies' versions of events. The alleged gun that was found at the scene was examined by a specialized forensic employee of the County. The report of that employee shows there was no DNA or fingerprints on the gun that scientifically connects the gun to Anthony. On its surface, without hyperbole, this shooting looks like a murder. Even more egregious is the testimony of Sergeant Rodriguez who was one of the first officers who arrived at the scene of the shooting. Sergeant Rodriguez testified she saw a gun popping out Mr. Vargas' waistband and flying in the air when she arrived on the scene.

On August 16, 2020, Sheriff Alex Villanueva had a press conference in which

1  he publicly reported he  has moved to discipline 26 employees for misconduct related

2  to a fight during an off-duty East L.A. station party at which several deputies said

3  they were attacked by tattooed members of the Banditos clique.  Please see Plaintiff's

4  Exhibit [D]. The press conference held by Sheriff Villanueva and other LASD

5  officials proves unequivocally the Banditos gang out of the ELA precinct is real and

6  does exist. Plaintiff's operative complaint alleges the moving force behind the

7  murder of Anthony Vargas is the county's failure to stop the Banditos gang/clique

8  from operating in the ELA Precinct. Plaintiff's municipal liability claim is partially

9  based on this claim.

10      As suggested by the Court, Plaintiff set the deposition of the Person Most

11  knowledgeable from the County of Los Angeles regarding the "Banditos." Please *See*

12  Dkt. 61, Page 2 ("*In the meantime, Plaintiff should serve Defendants with a Rule*

13  *30(b)(6) notice requesting that Defendants produce the person(s) most*

14  *knowledgeable of the deputy gangs and the Banditos gang operating out of the East*

15  *Los Angeles station* (*see* Villanueva Motion at 23) as well as other issues relevant to

16  Plaintiff's *Monell* claim. The Court expects the parties to *work in good faith to find*

17  *the appropriate deponents* and to schedule them as soon as practicable."). On July 6,

18  2020 Plaintiff set the deposition of the PMK to be done on August 6, 2020. Please

19  see Plaintiff's Ex. [E].

20      Instead of producing the proper FRCP Rule 30(b)(6) PMK on August 6, 2020,

21  Defendant produced Sergeant Paul Valle, an Internal Affairs Division investigator,

22  who could not answer any meaningful questions. Internal Affairs Investigator Valle

23  testified all of the information he had regarding the Banditos, if any, was obtained by

24  him as part of his role as an investigator, which according to him was part of  a so

25  called "ongoing investigation into an alleged complaint  of a hostile work

26  environment at the ELA Precinct. Plaintiff's Exhibit [F], Testimony of Sgt. Valle:  P

27  25 L 7-25; P 58 L 4-12.

28      The very first substantive question made during the deposition to the witness

regarding the banditos was; "**So what are the Banditos**?"   Immediately defense counsel violated FRCP 30 by objecting and providing multiple suggestive answers and then eventually instructing the witness not to answer. Plaintiff's Exhibit [F], Testimony of Sgt. Valle: P 18 L 23-25, P 19 1-15, P 20 L 16-25; P21 L1-25; P 22 L 1-25; P 23 L 1-23; P24 L 1-25; P52 L 16-22.   The record clearly shows defense counsel repeatedly violating FRCP Rule 30.

Federal Rule of Civil Procedure, Rule 30 is the rule that defines the proper way to object during a deposition and instruct a witness not to answer a question if necessary. Specifically, Rule 30 provides, "*An objection at the time of the examination-whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition-must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under rule* 30(D)(3).

The record is painfully demonstrative defense counsel not only made multiple objections, as was his right to do, but he continually interjected a unreasonable and unnecessary narrative as to why the witness should not answer the question. Defense counsel's behavior would not abate despite Plaintiff's counsel's request that defense counsel stop. The entire record of defense counsel's improper narrative and suggestive objections is not attached to this motion by Plaintiff, as defense has threatened to attach the entire video of the deposition. If it is attached by defense counsel, the record speaks for itself. Nonetheless, the primary issue in this discovery is whether defendant produced the proper PMK, Plaintiff believes she has provided enough information in this motion for the court to make that determination.

Conversely, the production of this witness was an intentional action to prevent Plaintiff from deposing the PMK regarding the Banditos.  This witness did not know

anything about the incident at Kennedy Hall where it was revealed deputies from the Banditos beat up other deputies. This is the incident Sheriff Villanueva publicly reported on August 13, 2020 that he was suspending and firing 26 deputies that work in ELA that are part of the banditos. Sgt. Valle testified he had no knowledge of the 2018 Kennedy Hall incident, which occurred within weeks of the killing of Anthony Vargas. Plaintiff's Exhibit [F], Testimony of Sgt. Valle: P52 L 2-25; P77 L16-20. Sgt. Valle instead testified he is an investigator for the Internal Affairs Division of the Sheriff's Department, and his role was is to investigate an alleged hostile work environment at the ELA station that is ongoing. Plaintiff's Exhibit [F], Testimony of Sgt. Valle: P 25 L 7-25; P 58 L 4-12.

During the deposition Plaintiff's counsel learned Sergeant Paul Valle, was not the PMK requested by Plaintiff for this deposition. Plaintiff's counsel asked the witness, "what is your understanding of the Banditos gang, clique, social club, what is your understanding that is?  Since you are the person most knowledgeable."  His response was:" I cannot answer the question because what I know is through my active investigation. Plaintiff's Exhibit [F], Testimony of Sgt. Valle: P 34, L 17-25; P 35 L1-6.  Counsel instructed the witness not to answer. Please see, Plaintiff's Exhibit [F], Testimony of Sgt. Valle: P 36 L 3-11.  Most importantly, this witness testified he first learned anything regarding the Banditos *4 months prior to the deposition*.  Plaintiff's Exhibit [F], Testimony of Sgt. Valle: P 55 L 18-20; P 57 L3-6; P 58 L17-21; P 86 L2-22.

Most disturbing is the fact that immediately after each question defense counsel ordered the witness NOT to answer the question if his answer to the question would be based on any information he had obtained from his involvement in the alleged ongoing investigation. This same objection and instruction was repeated by defense counsel for all questions posed by Plaintiff's counsel to Sgt. Valle regarding the Banditos.

He also testified he had no knowledge regarding the Banditos at the time

4

**JOINT DISCOVERY MOTION**

1  Anthony Vargas was shot in August of 2018.  Plaintiff's Exhibit [F], depo of Valle,
2  at Page 58, Lines 4 to 12.

3      Furthermore, this witness demonstrated he had no knowledge whatsoever
4  regarding any other deputy gangs from the ELA station. Plaintiff's Exhibit [F], depo
5  of Valle, at page 28 L9-12; P72 L4-25; P73 L 1-25; P74 L1-11; P78 L12-13.  There
6  are public records that show deputy gangs have originated at the East Los Angeles
7  Sheriff's Precinct and this witness had absolutely no knowledge about any other
8  deputy gangs. Plaintiff's Exhibit [E].

9      The defendants in this case willfully failed to cooperate in discovery by
10 intentionally engaging in gamesmanship by producing a person for a deposition the
11 defendant knew was not the proper PMK. The designated person produced by
12 defense counsel under Rule 30(b)(6) was completely improper. The defense
13 produced the wrong person intentionally to prevent Plaintiff from being able to obtain
14 the necessary evidence to prove municipal liability. This blatant failure to cooperate
15 in this discovery caused Plaintiff unnecessary expense and a waste of counsels'
16 precious time and was an obstruction of justice. The information from the PMK
17 regarding the Banditos is proportional and highly relevant to the underlying shooting
18 and killing of Anthony Vargas. This has been pointed out to defense counsel multiple
19 times by the court. Defense counsel knew this and without any sense of fair play
20 offered a person that could not and would not offer any meaningful testimony
21 regarding the Banditos sheriff gang and other gangs operating out of the ELA station.

22     **B. Discovery Issue in Dispute**

23     This motion seeks an order that defendants produce a PMK regarding the
24 Banditos gang that is not involved in any alleged ongoing investigation and that has
25 information regarding the Banditos that is not based on any information learned from
26 any ongoing investigation.

27     **C. Relief Sought**

28     Plaintiffs seek an order compelling Defendant County of Los Angeles to

1    produce a PMK regarding the Banditos gang that is not involved in any alleged

2    ongoing investigation and that has information regarding the Banditos that is not

3    based on any information learned from any ongoing investigation. Plaintiff is also

4    requesting monetary sanctions against defense counsel and the County for failing to

5    produce a proper PMK and instead presenting someone the County knew would not

6    and could not offer any meaningful testimony regarding the Banditos.  Defendants

7    are refusing to produce the proper PMK and they should be sanctioned for this gross

8    misconduct in litigation.

9    **II.    DEFENDANT COUNTY OF LOS ANGELES' INTRODUCTORY**
     **STATEMENT**

10          This case arises out of a deputy-involved shooting that occurred on August

11   12, 2018. On August 12, 2018 at approximately 2:00 a.m. at the Nueva Maravilla

12   Housing Community in East Los Angeles, Defendant deputies DEPUTY NIKOLIS

13   PEREZ ("Deputy Perez") and DEPUTY JONATHAN ROJAS ("Deputy Rojas"

14   and "Deputies" or "Defendants" collectively) responded to a call of an armed

15   robbery that had recently taken place. The deputies attempted to detain Anthony

16   Vargas ("Mr. Vargas" or "Decedent"), who ran and then engaged the deputies in a

17   physical struggle against their lawful orders. During the struggle, Mr. Vargas

18   reached for and obtained a handgun in his waistband. As a result and in reasonable

19   fear of imminent death or serious body harm due to Mr. Vargas' actions, the

20   deputies fired their service weapons, striking and killing Mr. Vargas.

21         In March 2019, Plaintiff Lisa Vargas ("Plaintiff") filed this action for

22   wrongful death, excessive force (42 U.S.C. § 1983), denial of substantive due

23   process, municipal liability, violation of the Bane Act Cal. Civ. Code § 52.1,

24   battery and negligence.  *See generally* Plaintiff's Complaint and First Amended

25   Complaint, Dkt. # 1 and #28.

26          Here and as a preliminary matter, Defendants vehemently deny any

27   misconduct as alleged by Plaintiff herein, and submit that the herein motion is a

28

6

sham, yet another entirely purposely and manufactured discovery dispute, and merely a result of Plaintiff counsel Mr. Humberto Guizar's own abhorrent, sanctionable misconduct and self-sabotage during the deposition of Sgt. Paul Valle ("Sgt. Valle"). This Court is strongly advised that the mere twenty-four (24) pages of deposition transcript attached by Plaintiff nor even a reading of the whole one-hundred (100) page written transcript are sufficient in anyway to give the Court a clear, unbiased picture of the truth of exactly what happened during the PMK deposition of Sgt. Paul Valle, and lack of merit of Plaintiff's argument.

**For the Court to have a clear picture of exactly what happened during the PMK deposition of Sgt. Paul Valle, the lack of merit of Plaintiff's argument, and merit it Defendants' opposition and request for monetary sanctions against Plaintiff's counsel, Mr. Humberto Guizar ("Mr. Guizar"), personally, due to Mr. Guizar's ongoing, abhorrent, bad-faith misconduct, this Court <u>must</u> and is respectfully requested to watch the video of Sgt. Valle's fairly short deposition, which is attached hereto in its entirety as Defendants' <u>Exhibit G</u> (Sgt. Valle Depo. Video).** *See also generally* <u>Exhibit H</u>**- Sgt. Paul Valle Declaration,** *see also* <u>Exhibit I</u>**- Sgt. Valle Depo. Transcript.**

On June 4, 2020, the Court instructed that "Plaintiff should serve Defendants with a Rule 30(b)(6) notice requesting that Defendants produce the person(s) most knowledgeable of the deputy gangs and the Banditos gang *operating out of the East Los Angeles station*." Dkt. 61. On June 12, 2020 and out of an abundance of caution to avoid any potential confusion or discovery disputes on the issue, counsel for Plaintiff and Defendants met and conferred in good-faith regarding the potential ambiguous language of the PMK topic, and reached an understanding that the intended scope would be specifically the alleged "*Banditos*" deputy gang *operating East Los Angeles Station*. **Defs' Exhibit J- June 12, 2020 E-mail, and Exhibit K-Plaintiff's July 6, 2020 PMK Deposition Notice.**

This is important in anticipation of Plaintiff's arguments because the *only*

**JOINT DISCOVERY MOTION**

*gang* alleged in Plaintiff's FAC, alleged in the investigation, and for purposes of this lawsuit to be operating *out of East Los Angeles Station are the "Banditos."* **Exhibit H- Sgt. Paul Valle Declaration; *See generally* Dkt. 28- Exhibit L- Plaintiff's First Amended Complaint ("FAC").** Accordingly, Plaintiff's counsel's arguments of Defendants' alleged failure to designate an appropriate PMK based on Plaintiff's last minute pivot *during the Banditos PMK* deposition to questioning about an alleged *Compton Station Sheriff's gang* labeled "*The Executioners*," *which is also currently being investigated*, is entirely orchestrated, manufactured and entirely untrue. Nowhere in Plaintiff's FAC, deposition notice, or the aforementioned correspondence, or in any pleading before this Court did Plaintiff ever request verbally or otherwise any PMK re:  the alleged *Compton Station Sheriff's gang* labeled "The Executioners." Accordingly, Sgt. Valle's ignorance as a PMK regarding the alleged *Compton Station Sheriff's gang* labeled "The Executioners" does not *in anyway* reflect any alleged failure by Defendants to designate a PMK re: deputy gangs/Banditos *operating out of East Los Angeles Station.*

Here and regarding the merits of Plaintiffs' motion, Plaintiff's motion seeks *an illogical impossibility*, "that defendants produce a PMK regarding the Banditos gang *that is not involved in any alleged ongoing investigation and that has information regarding the Banditos that is not based on any information learned from any ongoing investigation*." [*Emphasis added*] Plaintiff clearly simply seeks to improperly and impossibly subvert this Court's repeated orders and numerous discovery motions sustaining Defendants' objections based in part, based on official information privilege that were never presented to the District Court for review and, thus, waived review. ***See generally* Defs' Exhibit – S- Dkt. 53, 54, 61, and 68.**

Here, there is no such *person because the person most knowledgeable "PMK" of the subject of the Banditos is and has been designated to logically be the internal affairs investigator, Sgt. Paul Valle*, who has taken over the *ongoing, incomplete*

*investigation of "Banditos"* stemming from allegations of a hostile work environment out of East Los Angeles Station. *See generally* **Defendants' Exhibit H- Sgt. Valle Decl.** It would have been a Sgt. Jeff Hamil ("Sgt. Hamil") as the original investigator, but Sgt. Hamil is unavailable due to medical leave.

The testimony of a Rule 30(b)(6) designee "represents the knowledge of the corporation, not of the individual deponents." *United States v. Taylor*, 166 F.R.D. 356, 361. A Rule 30(b)(6) designee presents the corporation's position on the noticed topics. *United States v. Massachusetts Indus. Finance Agency*, 162 F.R.D. 410, 412 (D.Mass.1995). A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide "binding answers on behalf of the corporation". *Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D.Kan.1999). A Rule 30(b)(6) designee is not required to have personal knowledge on the designated subject matter. *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc*., 236 F.R.D. 524, 528 (D.Kan.2006); *PPM Finance v. Norandal*, 297 F.Supp.2d 1072, 1085–86 (N.D.Ill., 2004); *Calzaturficio v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 37 (D.Mass.2001). Under Rule 30(b)(6), the party must prepare the PMK so that they may give complete, knowledgeable and binding answers on behalf of the corporation or entity. *U.S. v. Taylor,* 166 F.R.D. at 360–61 (M.D.N.C.), aff'd, 166 F.R.D.

Accordingly and after much time and effort spent by Defendants and Defendants' counsel, Sgt. Valle was identified and designated as the lead investigator and person most knowledgeable regarding the investigation pertaining to allegations of hazing/hostile work environment involving, in part, Department members out of the East Los Angeles Sheriff's station purporting to be members of a deputy clique or sub-group called the "Banditos" or "Bandidos."   **Exhibit H- Sgt. Valle Decl. ¶ 5.** Sgt. Valle was prepared for the deposition by intensively reviewing of the thousands of pages and items of investigative materials pertaining to the subject topic requiring several hours spread across several weeks **Exhibit H- Sgt. Valle Decl. ¶ 7.**

However, nothing changes the fact that the information in the *incomplete*

*investigation* is protected by official information privilege. Plaintiff's position and request is illogical because there is no such person who can be a designated "PMK" with authority to testify on behalf of and bind Defendant County of Los Angeles with information outside of the incomplete, ongoing investigation that is comprehensively investigating this issue. Defendants' counsel even repeatedly instructed that the witness, Sgt. Paul Valle, *could* answer the pending question *if* he could do so *without* divulging information gathered during the course of the incomplete, ongoing investigation, which Sgt. Valle indicated he simply could not do to Plaintiff's counsel's ridicule. **Exhibit H- Sgt. Valle Decl. ¶ 13.** The fact that Sgt. Valle's knowledge as a PMK is from the incomplete investigation is of no consequence.

Here, the Court is reminded that Plaintiff knew or should have known, *and was even reminded at the outset of the deposition* that Plaintiff would not be allowed to obtain information that was the subject of the *ongoing, incomplete investigation* as the Court has repeatedly instructed. (*see* **Defs' Exhibit G-Valle Depo. Video, Exhibit I-Valle Depo. Transcript pg. 8/ ln. 11-9/15**)

The video and deposition transcript will show that Mr. Guizar simply and spectacularly lost his temper during the deposition despite knowing and being advised of the aforementioned parameters, refused Defs' counsel's good-faith efforts for Mr. Guizar to simply rephrase or ask the right questions, repeatedly abused, berated, harassed and ridiculed Defendants' counsel and Sgt. Valle *during a federal deposition proceeding*. *See generally* **Defendants' Exhibit G, H, and I**.

As shown in the attached evidence, Mr. Guizar's misconduct during discovery, especially depositions, have been abhorrent, harassing, abusive, in violation of duties of civility, and has repeatedly, needlessly and significantly increased the cost of litigation requiring unnecessary expenditure of judicial and Defendants' time and tax payer resources to adjudicate various frivolous discovery motions and/or other motions. Further evidence of such is that counsel for the parties are contacting the Court on nearly a weekly basis regarding various discovery issues, including simple

**JOINT DISCOVERY MOTION**

meet and confer requirements. Mr. Guizar has gone to great lengths to personally threaten and berate Defendants' counsel, Mr. Kizzie ("Mr. Kizzie"), and Mr. Kizzie's firm privately, publicly, via email and even during *federal deposition proceedings*.

Such instances include, but are not limited to, Mr. Guizar calling Mr. Kizzie a "smart ass" during federal deposition proceedings (**Exhibit M**), Mr. Guizar yelling that Mr. Kizzie "doesn't give a crap about my client" during federal deposition proceedings (**Exhibit N**), repeatedly losing his temper and devolving depositions into shouting matches (**Exhibit O**), publicly and libelously defaming Mr. Kizzie's firm on the Facebook page of partner Rodney S. Diggs ("Mr. Diggs") (**Exhibit P**), and harassing Mr. Kizzie with an unrelated lawsuit involving Mr. Diggs while implicitly back-handedly threatening to "post this incendiary lawsuit on facebook" despite implicitly threatening Mr. Kizzie by insinuating that Mr. Guizar could if he wanted to in order to damage Mr. Kizzie personally and Mr. Kizzie's firm (**Exhibit Q**), and most recently **on August 18, 2020** threatening to falsely and slanderously hold a press conference solely to state that Mr. Kizzie and Mr. Kizzie's firm "represents killer cops" in order to attempt to damage Defendants' counsel's firm's reputation in an attempt to gain some leverage in this lawsuit or retribution against Mr. Kizzie and Mr. Kizzie's firm for the Court's ruling sustaining  Defendants' privilege objections requiring a *second* warning by Defendants' counsel. **Exhibit R** *see also* **Exhibit P.**

Accordingly, the record firmly establishes Plaintiff simply squandered his opportunity to depose the appropriate PMK due to his own short temper, refusal to heed this Court's orders, and abhorrent misconduct. Plaintiff's motion and absurdly punitive and unsupported request for $15,000 sanctions should be denied outright. Further, the record supports Defendants' request that Plaintiff's motion not only be denied, but Plaintiff's counsel, Mr. Guizar, be sanctioned in the amount of $7,140.00 and whatever other sanctions the Court finds appropriate to stop Mr. Guizar's unrelenting, abusive and bad-faith litigation misconduct.

### III.  DISCOVERY DISPUTE REGARDING PMK REGARDING THE BANDITOS GANG AND OTHER DEPUTY GANGS AT THE ELAS SHERIFF'S STATION

**A. Plaintiff's Request:**

This motion seeks an order that requires the defendants to produce a properly identified PMK regarding the Banditos gang and other gangs in ELA.  Said witness should not be personally involved as an investigator in any alleged ongoing investigation, and the witness should have the information regarding the Banditos that is not based on any information learned from any ongoing investigation.

**B. Defendant's Response:**

Defendants appropriately fulfilled FRCP 30(b)(6) obligations to identify, educate and produce a PMK regarding the alleged "Banditos" gang operating out of East Los Angeles Station as requested by Plaintiff. **Exhibit H- Valle Decl. ¶ 5-7.** There have been no allegations of "other gangs" operating out of East Los Angeles Station, and the "Executioners" have only recently been alleged to operate out of Compton Station, and are also being investigated. **Exhibit H- Valle Decl. ¶ 8-9** However, the information is still protected by official information privilege because the investigation is incomplete. **Exhibit H- Valle Decl. ¶ 6.**  Plaintiff's motion simply seeks an illogical and unsupported impossibility, and simply seeks to improperly subvert this Court's orders sustaining Defendants' official information privilege objection.

**C. Plaintiffs' Argument for Compelling County of Los Angeles To Produce Relevant Documents.**

**i.  Legal Standard**

Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in pertinent part:

(a) Motion for an Order Compelling Disclosure or Discovery.

(1) In General. On notice to other parties and all affected persons, a party may

move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37.

### ii. Relevance

Discovery is not limited to the issues raised in the pleadings but encompasses any matter that bears on or reasonably could lead to other matter that bears on any issues that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). However, discovery does have ultimate and necessary boundaries. *Oppenheimer Fund, Inc.*, 437 U.S. at 351.

Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351. Discovery is designed to help define and clarify the issues. *Id.* Although relevancy is broadly defined for the purposes of discovery, it does have "ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). "The party who resists

discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Here, Plaintiff set the deposition of the PMK regarding the Banditos deputy gang and other gangs in East Los Angeles.

### iii. FRCP 30(b)(6)

Federal Rules of Civil Procedures, Rule 30(b)(6) provides in pertinent part, "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization."

In response to a Rule 30(b)(6) deposition notice, "corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, provided that the information is reasonably available to the corporation." *Memory Integrity, LLC v. Intel Corp.,* 308 F.R.D. 656, 661 (D. Or. 2015); *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) ("The duty to prepare a Rule 30(b)(6) designee goes beyond matters personally known to the witness or to matters in which the designated witness was personally involved."). The corporation must identify and prepare its witnesses "so that they may give complete, knowledgeable and binding answers on behalf of the corporation.*" Shuthima Pongsai v. Am. Express Co.*, No. 8:19-cv-01628-DOC (JDEx) (C.D. Cal. June 29, 2020) (citing *Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan.

1   1999) (**a corporation has "a duty to make a conscientious, good-faith effort to**
2   **designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare**
3   **them to fully and unevasively answer questions about the designated subject**
4   **matter**") (emphasis added).

5      "The designating party has a duty to designate more than one deponent if
6   necessary, to respond to relevant areas of inquiry on the noticed topics." *Great Am.*
7   *Ins. Co. of New York*, 251 F.R.D. at 539. Although courts have recognized that
8   "[a]dequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely
9   the result of the concomitant obligation from the privilege of being able to use the
10  corporate form in order to conduct business.'" *Id.* at 540. In order for the Rule "to
11  effectively function, the requesting party must take care to designate, with
12  painstaking specificity, the particular subject areas that are intended to be questioned,
13  and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.,*
14  193 F.R.D. 633, 638 (D. Minn. 2000). Therefore, "Rule 30(b)(6) places substantial
15  responsibilities and burdens on the responding corporate party," *Memory Integrity*,
16  308 F.R.D. at 661.

17     Instead of designating the improper person, the "'proper procedure to object to
18  a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but
19  to move for a protective order.'" *Rutherford v. Evans Hotels, LLC,* 2018 U.S. Dist.
20  LEXIS 202663, 2018 WL 6246516, at *3 (S.D. Cal. Nov. 29, 2018) (quoting *Beach*
21  *Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D. N.C. 2014)). "Put simply
22  and clearly, absent agreement, a party who for one reason or another does not wish
23  to comply with a notice of deposition must seek a protective order. *New England*
24  *Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 165-66
25  (D. Mass. 2007).

26     Here, Defendant failed to comply with Federal Rules of Civil Procedure Rule
27  30(b)(6) by intentionally designating a person who is unqualified on the topic of the
28  Banditos operating out of the East Los Angeles Sheriff's Station. Indeed, Defendant

purposefully designated an internal affairs investigator to involve the official information privilege and prevent the deponent from testifying about any information the deponent possesses. Clearly, any information the designated deponent possessed would fall under the privilege because inherently, the designated person only obtained information about the Banditos in his capacity as an internal affairs investigator within the Sheriff's Department. Defendant acted in bad faith in designating an internal affairs investigator and the designation was wholly improper done solely and only to obstruct, delay, and prevent Plaintiff from obtaining basic information regarding deputy gangs.

### iv. *Monell* Liability

"[A]n unjustified shooting by a police officer cannot, without more, be thought to result from official policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985)). Rather, a plaintiff must demonstrate that a policy is "a deliberate choice to follow a course of action . . . made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)). Municipal liability under Monell may also attach where there is evidence of a "widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law," *Gillette v. Delmore*, 979 F.2d 1342, 1348–49 (9th Cir. 1992) (internal quotations omitted), or when "inadequacy of police training . . . amounts to deliberate indifference to the rights of persons," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Finally, municipalities may be liable when a plaintiff is injured by a decision of a "final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).

In short, a municipality is only liable under § 1983 if it created policies and customs that were deliberately indifferent to the plaintiff's constitutional rights and those policies were the "moving force" behind the constitutional violations that

caused the plaintiff harm. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001). A policy or custom is considered a "moving force" behind a constitutional violation if a plaintiff can establish both causation-in-fact and proximate causation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

In terms of Plaintiff's *Monell* claim, the deposition of the PMK regarding the Banditos is directly relevant in assessing whether there is a widespread practice within the County perpetuated by not adequately disciplining deputies constituting a custom or usage with force of law. The requested deposition of the  PMK will help plaintiff prove or disprove whether officials within COLA are ratifying the violation of the constitutional rights of the members of the communities by condoning and allowing a deputy gang to continue violating the rights of the public and other deputies.

Alternatively, even if the requested PMK does  not testify there is a  widespread practice that  constitutes a custom or usage within the COLA, the testimony of the proper PMK may demonstrate that the COLA's failure to train its deputies amounts to deliberate indifference to the constitutional rights of the members of the community. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("inadequacy of police training . . . amounts to deliberate indifference to the rights of persons,").

Having the proper PMK is also necessary because the PMK may display the decisions made by final policy makers within the COLA. If a decision by a policy maker within the COLA resulted in Plaintiff's injury, Plaintiff can prevail in her municipal liability claim. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (municipalities may be liable when a plaintiff is injured by a decision of a "final policymaker.").

Again, the pervasiveness of deputy gangs within the County of Los Angeles Sheriff's Department is in the public domain. Please See Exhibit [E], a compilation of a small number of public documents regarding deputy gangs. It is a complete misrepresentation for the COLA to state Sergeant Valle is the PMK regarding the

Banditos. The deposition notice was served on the COLA on July 6, 2020. It is an intentional effort by defense counsel here to offer a unqualified sheriff to testify about deputy gang that has learned about deputy gang a measly four (4) months before the deposition. Indeed, Sheriff Alex Villanueva himself has made multiple public statements including a statement on July 12, 2019 to CBS 2 News where he said "its always [deputy gangs] been a concern. This is a concern that goes back to the 1970s and it resurfaces every ten (10) years or so and the most latest version of it is with Los Banditos in East Los Angeles station" in response to a question asking if there are secret deputy gang societies some sheriff's deputy say exist within the department.

(Please See July 12, 2010 CBS 2 Report:

 **https://losangeles.cbslocal.com/2019/07/12/la-county-sheriff-alex-villanueva-fbi-banditos-secret-society-la-times/)**.

Most recently, at an August 13, 2020 press conference Sheriff Villanueva announced that after investigation regarding an incident at Kennedy Hall in September of 2018, Villanueva moved to discipline 26 employees for misconduct related to a fight during an off-duty East L.A. station party at which several deputies said they were attacked by tattooed members of the Banditos clique. Please see Plaintiff's Exhibit [D]. The investigation found that some employees at East L.A. station were acting as so-called "shot callers," controlling scheduling and events at the station, she said, using a term often used to describe top leaders in prisons and gangs. Please see Plaintiff's Exhibit [D]. Villanueva also stated, "but we're not gonna go on an inquisition and go through the entire 18,000 employees of the department to see if they have a tattoo or they're a member of a group. That would be inappropriate and wildly speculative. We're trying to run an organization, not engage in a witch hunt." Please see Plaintiff's Exhibit [D].

Therefore, based on statements by Sheriff Alex Villanueva and other key figures from the COLA Sheriff's Department, there is someone from the COLA that is

equipped to provide testimony regarding the Banditos gang. It cannot be disputed records and documents exist which describe the existence of deputy gangs and the "Banditos" deputy gangs and which sheriff deputies and which sheriff supervisors from the ELA precinct are allegedly connected to the Banditos.

In sum, in addition to the direct relevance of having a proper PMK testify, Plaintiff having the ability to depose the PMK will allow Plaintiff to uncover additional evidence in the underlying shooting and allow Plaintiff to prosecute her municipal liability claim.

**D. THE COUNTY OF LOS ANGELES AND/OR THEIR COUNSEL ANTONIO KIZZIE SHOULD BE SANCTIONED REASONABLE ATTORNEY'S FEES AND COSTS ASSOCIATED WITH PLAINTIFF HAVING TO BRING THIS MOTION, AND TO DISCOURAGE FUTURE DISCOVERY MISCONDUCT**

28 U.S.C.A. § 1927 states, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Federal Rules of Civil Procedure Rule 37 also authorizes the court to issue sanctions—from fee awards to "terminating" sanctions—against parties or attorneys for violation of discovery orders or abusive conduct in the course of discovery proceedings.

Federal Rules of Civil Procedure 26(g) also authorizes this Court to issue monetary sanctions against attorneys in discovery proceedings who file a response lacking substantial justification.

Central District Court Local Rule 83-7 authorizes monetary sanctions authorized for "willful, grossly negligent, or reckless" violations of local rules, plus costs and fees to opposing counsel for "bad faith" conduct or willful disobedience of court order. Some federal courts have imposed sanctions for violation of applicable

rules of professional conduct. See *Midwest Motor Sports v. Arctic Cat Sales, Inc.* (8th Cir. 2003) 347 F3d 693, 697 (Evidentiary sanction excluding information obtained by counsel in violation of state rule of professional conduct.)

Here, Defense counsel and defendant County cannot show that Defendant was "substantially justified" in presenting a PMK that was not the proper PMK and essentially thumbing his nose at the court, who clearly suggested that Plaintiff set a PMK regarding the Banditos. Such willful actions to subvert the administration of justice must not be condoned or defense counsel will continue obstructing and refusing to produce discovery Plaintiff is entitled to obtain. Therefore, Plaintiff is entitled to and hereby requests reasonable monetary sanctions in the amount of $14,250.00 against Defense counsel and the County. In addition, defense counsel should be ordered to pay for the incurred costs of the court reporter and video recording fees for the unnecessary deposition of Sgt Valle, which was $2,395.30. Please see Declaration of Humberto Guizar ¶ 19-22.

**E.   DEFENDANT'S ARGUMENT**

**1.   THE PMK DEPOSITION WAS STILL SUBJECT TO THE COURT'S ORDERS SUSTAINING DEFENDANTS' OBJECTIONS BASED ON OFFICIAL INFORMATION PRIVILEGE**

As previously stated, Defendants vehemently deny any misconduct as alleged by Plaintiff herein. Further, this motion is a sham because PMK deposition or not, Plaintiff knew or should have known that *Plaintiff and the PMK deponent* would be bound by the parameters of this Court's repeated discovery orders explicitly sustaining Defendant's official information privilege objections *months before the deposition took place*. **See generally Defs' Exhibit S- Dkt. 53 (May 11, 2020),** **Dkt. 54** (May 14, 2020 - "The Court sustains Defendant's assertion of the official information privilege in response to RFP Nos. 13, 18 and 36. Defendant may withhold production of responsive records relating to *any ongoing investigation(s)*

until the investigation(s) have concluded."), **Dkt. 61** (**June 4, 2020**- "Nevertheless, while the internal affairs investigation is pending, Defendants can withhold, production of responsive documents pursuant to the official information privilege. (Dkt. No. 54). The privilege equally applies to any questions to Sgt. Carr that specifically implicate the pending internal affairs investigation."), **Dkt. 68** (**June 16, 2020**- "The Court has previously found that official information privilege applies to documents related to the County's ongoing investigations of the August 2018 shooting of Decedent and the subsequent December 2019 officer-involved shooting by Deputy Perez. (Dkt. Nos. 53, 54)."); see also *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991)("Federal common law recognizes a qualified privilege for official information.")

Defendants' aforementioned objections based on official information privilege were never presented to the District Court for review and, thus, review was waived. Accordingly, it should have been no surprise to Plaintiff that Defendant would object and the PMK would be instructed not to answer certain questions based on official information. In fact and in a good-faith effort to minimize surprise, Defendants' counsel reminded Plaintiff of such at the very beginning of the deposition as set forth below:

Further, this Court is reminded that on May 21, 2019 Defendants moved for a stay of this action due to pending investigations, which Plaintiff opposed and the District Court denied. *See generally* Dkt. 16, 22, and 26. Accordingly, Plaintiff's counsel knew or should have known the risk in proceeding with discovery when investigations are incomplete.

"**MR. CONTRERAS:** Did you want to say something, Mr. Kizzie?
**MR. KIZZIE:** Yes, please. Thank you very much for indulging me and Mr. Guizar. The witness Sergeant Paul Valle has been designated on behalf of the county and produced as the person most knowledgeable regarding the topic

at issue discussed before the magistrate and agreed to between counsel regarding I believe quote Banditos and gangs operating out of the East Los Angeles station stemming from Sergeant Valle's involvement in an ongoing internal affairs investigation.

So of course to hopefully make things run a little smoother and to establish the boundaries we reserve the right to object on official information privilege as to any specific facts or details regarding the investigation. We also reserve the right to object to any questions beyond Sergeant Valle's designation as a person most knowledgeable regarding that topic. I will as a courtesy and to be flexible allow questioning regarding the potentially general policies or procedures regarding internal affairs investigations, et cetera.

However Sergeant Valle has not been designated as a person most knowledgeable on behalf of the county of such so we do not consider any of his responses outside of his designation as a person most knowledgeable regarding the aforementioned topics to be binding or designated or approved on behalf of the County of Los Angeles." **Exhibit I-Valle Depo. Trans. Pg. 8/ln. 11- pg. 9/ln. 15.**

Plaintiff cites no authority that 30(b)(6) PMK depositions are somehow exempt from federal court orders and discovery objections regarding privilege because there is none. Accordingly, Defendants justifiably and reasonably asserted such objections, and such does not in any way support Plaintiff's argument that Defendants designated an inappropriate PMK.

Further Defendants' counsel repeatedly offered Plaintiff's counsel opportunities to either change his questions (which Plaintiff's counsel stubbornly rejected) to avoid the potential objections and/or advised the deponent, Sgt. Valle, that Sgt. Valle could answer the question if he had any knowledge outside of the incomplete internal affairs investigation, examples of which are set forth below:

**MR. GUIZAR Q:** Okay. So are you the person most knowledgeable from the County of Los Angeles Sheriff's Department? In other words are you the person who knows the most about the Banditos gang and other gangs operating out of East Los Angeles? Yes or no, sir?
**MR. KIZZIE:** All right. So objection as stated earlier. Sergeant Valle is

being produced and has been designated as the person most knowledgeable regarding the topic at hand. If counsel -- in an effort to try to get this moving along if counsel simply asks Sergeant Valle what has he been tasked to investigate --

MR. GUIZAR: No. No. No. I'm not asking for an investigation. (Simultaneous talking. Inaudible.) I'm not going to ask the questions you want. You want me to go down that route because you're going to instruct him not to answer. No. I'm not going to do that.

MR. KIZZIE: Counsel, I'm not finished

MR. GUIZAR: No. No. No. No.

MR. KIZZIE: I'm not finished with my objections. If counsel -- in an effort to move this along rather than put words in the deponent's mouth if counsel simply asks the deponent the nature of his investigation that he's been assigned to investigate --

MR. GUIZAR: No. I'm not going to ask him about the investigation. I'm not going to ask him about the investigation. No.

MR. KIZZIE: If you would allow him to answer all of these questions would be answered and we can move on --

MR. GUIZAR: You already told him. You already set the ground rules and said about any investigation --pending investigation -- and that's all he did. Four months to investigate. So he's not the person most knowledgeable, Counsel.

MR. KIZZIE: I said that you cannot ask specifics, Counsel. If you ask generally --

MR. GUIZAR: No. No. No. No. No. Mr. Contreras, I'm going to call the magistrate judge right now and see if we can resolve this once and for all. Call the magistrate judge, please.

MR. KIZZIE: Please call the magistrate --

MR. GUIZAR: I am.

MR. KIZZIE: -- because you're holding up your own deposition.

MR. GUIZAR: I am.

MR. KIZZIE: If you ask the nature of his investigation -- what he's been tasked --

MR. GUIZAR: No. No. No. This is not an investigation. I'm asking this specific information for the person supposedly most knowledgeable from the L.A. County Sheriff's Department. Not a person who's been investigating recently assigned because you want to use that as a ploy to ride the coattails of this current investigation jargon. So no. We're going to talk to the judge.

MR. KIZZIE: I don't ascribe to your suspicions. Okay?

MR. GUIZAR: Okay. We're going to stay on hold like you did last time. I'm not going to talk to you no more. I'm not going to talk to you no more.

23

**JOINT DISCOVERY MOTION**

1    **MR. KIZZIE:** Well then please let me finish.

2    **MR. GUIZAR:** I'm not going to talk to you, Counsel. Stop it. I don't want to talk to you.

3    **MR. KIZZIE:** If you ask --

4    **MR. GUIZAR:** I don't want to talk to you. Stop  talking. Stop talking.

     **MR. KIZZIE:** Stop telling me to stop talking. If you ask --

5    **MR. GUIZAR:** What are you talking for? We're at an impasse. We're at an

6    impasse. We're at an impasse.

     **MR. KIZZIE:** Your question --

7    **MR. GUIZAR:** We are at an impasse, Counsel.

8    **MR. KIZZIE:** You know what? You did not ask him –

     **MR. GUIZAR:** We have incompatible differences you and I now.

9    Irreconcilable differences.

10   **MR. KIZZIE:** I don't care what you call it or how you characterize them, Counsel.

11   **MR. GUIZAR:** All right. That's what it is.

12   **MR. KIZZIE:** You're holding up your own deposition.

     **MR. GUIZAR:** All right. It's a sandbag if I've ever seen one.

13   **MR. KIZZIE:** I don't think so.

14   **MR. GUIZAR:** All right.

     **MR. KIZZIE:** Counsel, are you going to ask the next question or what?

15   **MR. GUIZAR:** No. I'm waiting for -- we're going to get ahold of the

16   magistrate judge right now. **Exhibit I-Valle Depo. Trans. Pg. 28/ln. 7- pg. 31/ln. 25.**

17

18   **BY MR. GUIZAR:** Q What is your understanding of what the Banditos

19   gang, clique, social club -- what is your understanding that it is? Since you're the person most knowledgeable tell me about it.

20   **MR. KIZZIE:** Okay. So Sergeant Valle, as discussed earlier you can answer this question if you can answer it without referring to information gathered

21   from the investigation. Do you understand?

22   **THE WITNESS:** I do.

     **MR. KIZZIE:** Okay. You can answer.

23   **THE WITNESS:** I cannot answer that question because what I know about

24   it is through my active investigation.

     **MR. KIZZIE:** All right.

25   **MR. GUIZAR:** Okay. So we're going to end this deposition. You were

26   improperly designated. We're going to end this deposition. I'm going to take this up. I'll take it to the judge. I'm done. That's it.

27   **MR. KIZZIE:** Counsel --

28   **MR. GUIZAR:** There's nothing more I can ask.

**MR. KIZZIE:** Counsel, I'm not

**MR. GUIZAR:** What should I ask?

**MR. KIZZIE:** Counsel, I'm not finished with my objection. Then based on -

**MR. GUIZAR:** There's no objection. He's already answered. What are you objecting to? Your own witness?

**MR. KIZZIE:** Stop.

**MR. GUIZAR:** What are you objecting to?

**MR. KIZZIE:** Stop and stop raising your voice.

**MR. GUIZAR:** What are you talking for?

**MR. KIZZIE:** Please stop and stop raising your voice. Objection. Instruct the witness not to answer based on official information privilege. Counsel, you knew going into this deposition that Judge Sagar had upheld the official information privilege as to this investigation so your frustration and purported surprise that you're not able to go into the facts of it is absurd. So objection. Instruct the witness not to answer. **Exhibit I-Valle Depo. Trans. Pg. 34/ln. 17- pg. 36/ln. 11.**

**MR. GUIZAR:** Besides doing investigations on the assignment that you talked about have you talked to anybody else in the County of Los Angeles regarding the Banditos gang?

**MR. KIZZIE:** One second.

**BY MR. GUIZAR:** Besides your lawyer.

**MR. KIZZIE:** One second. I'm thinking if the question is objectionable because if the question is referring to has he talked to anybody else from the county regarding the Banditos then that's obviously the subject of the ongoing investigation and I would have to instruct him not to answer. But if you're asking if he has spoken to anyone from the county to prepare for this 30(b)(6) deposition I'll allow him that. So if you want to clarify the question so as to avoid an objection feel free to but if not then I have to out of an abundance of caution instruct him not to answer. So what do you want to do, Counsel?

**MR. GUIZAR:** I've asked my question. If you're instructing him not to answer that will be an issue we'll take up the court. So are you going to follow your attorney's instruction not to answer, sir?

**MR. KIZZIE:** Well one second. I have not given the instruction. As I said, Counsel, your question is vague and can be interpreted one way that would lead to such an investigation or another way that would not lead to an investigation. If you --

**MR. GUIZAR:** I don't know if that's the case. I'm asking him the question and he needs to answer my question. If he doesn't answer my question we'll

**JOINT DISCOVERY MOTION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

move on. Ms. Court Reporter, could you please read back my question again.
**THE REPORTER:** Yes. This is the reporter. Give me a moment to find it and I will read it. Question: "Besides doing investigations on the assignment that you talked about have you talked to anybody else in the County of Los Angeles regarding the Banditos gang?"
**MR. KIZZIE:** One second, Sergeant Valle. I mean I'll object because the question is vague and because it's vague it can be interpreted one way which would entail facts of the investigation or another way that would not necessarily entail facts of the investigation but more so people he's spoken with in preparation for this deposition. Counsel refuses to specify or clarify the question one way or the other so out of an abundance of caution I'm inclined to instruct the witness not to answer but Sergeant Valle, if you understand the question and what it's asking and if you understand it to not be asking who you've spoken with in furtherance of the investigation 4 then I'll allow you to answer but if you understand the question to mean who you have spoken with from the county in furtherance of this investigation then I have to instruct you not answer. So Sergeant Valle, in your understanding of the question how do you understand the question?
**THE WITNESS:** Since I'm still -- the only information that I have is related to the active investigation and I can't answer that.
**MR. KIZZIE:** Okay. Then I will have to object and instruct the witness not to answer on official information privilege. **Exhibit I-Valle Depo. Trans. Pg. 52/ln. 23- pg. 55/ln. 15.**

**MR. GUIZAR:** Q Before you got involved in this investigation would it be accurate you had no knowledge about the Banditos deputy gang or clique? Right?
**THE WITNESS:** That's correct.
**MR. KIZZIE:** One second. One second. Same objection. Further generally moving forward if you can answer the question without revealing facts --
**MR. GUIZAR:** He's already answered.
**MR. KIZZIE:** Don't interrupt me, Counsel. If you can answer the question without revealing facts --
**MR. GUIZAR:** Don't talk so much.
**MR. KIZZIE:** Counsel, please stop. Okay? Please stop.
**MR. GUIZAR:** Why do you do that?
**MR. KIZZIE:** Please stop.
**MR. GUIZAR:** He's already answered.
**MR. KIZZIE:** Counsel, please stop. If you can answer the question without revealing facts that are based on any ongoing investigation then that's fine.

**JOINT DISCOVERY MOTION**

And you answered the prior question just kind of generally moving forward. That's kind of the rubric that I (inaudible). Go ahead, Counsel. **Exhibit I-Valle Depo. Trans. Pg. 57/ln. 3- pg. 58/ln. 2.**

**THE REPORTER:** Question: "Did you first learn about the Banditos as a result of getting involved in this investigation four months ago?"
**MR. KIZZIE:** All right. So same objections. If, Sergeant Valle, you can answer this question without revealing any information from any ongoing investigations then you can answer. If you can't then so indicate.
**THE WITNESS:** I learned of the Banditos as a result of this investigation. **Exhibit I-Valle Depo. Trans. Pg. 56/ln. 17- pg. 57/ln. 1.**

**MR. GUIZAR:** So the only time you ever heard about the Banditos deputy clique or gang was when you got involved in the investigation and then you read materials. Would that be accurate?
**THE WITNESS:** Yes.
**MR. KIZZIE:** All right. Objection.
**MR. GUIZAR:** He's already said yes.
**MR. KIZZIE:** Well that's fine but same objection. Go ahead.
**MR. GUIZAR:** What's your objection, Counsel? The truth? I object to the truth?
**MR. KIZZIE:** Please stop. Counsel, please stop.
**MR. GUIZAR:** No. That's what you're doing.
**MR. KIZZIE:** Please stop.
**MR. GUIZAR:** What do you mean please stop? That's what you're doing. You're objecting to the truth. He just said yes.
**MR. KIZZIE:** Counsel --
**MR. GUIZAR:** Go on. Go on. Go on.
**MR. KIZZIE:** Counsel, stop interrupting me. This is exactly why the magistrate needs to see the entire transcript to see your conduct and I certainly hope she does. So when I say --
**MR. GUIZAR:** Your conduct is obstructive. Completely obstructive.
**MR. KIZZIE:** Counsel, I'm not finished. Counsel, I'm not finished.
So when I said same objection I meant that if Sergeant Valle has information about the Banditos that has not been gleaned from this or from any ongoing internal affairs investigation he can answer. Your question is along the lines of "Have you ever heard of the Banditos?" So if he said "Yeah. I've heard about it in the media" that's fine but if his only reference of knowledge is from an ongoing investigation then that's subject to official information privilege. **Exhibit I-Valle Depo. Trans. Pg. 58/ln. 17- pg. 60/ln. 2.**

**JOINT DISCOVERY MOTION**

1

2       Then, Plaintiff's counsel simply proceeds to blatantly ask questions in

3   violation of the Court's orders sustaining Defendants' objections based on official

4   information privilege, examples of which are set forth below:

5
        **MR. GUIZAR:** Are the Banditos a social club?
6       **MR. KIZZIE:** Well I'm going to object. I think that entails information that
        is subject to or gleaned from this ongoing investigation and instruct the
7       witness not to answer
8       **MR. GUIZAR:** Are the Banditos a deputy gang?
9       **MR. KIZZIE:** Same objection. Instruct the witness not to answer. Official
        information privilege such as gleaned from the facts of investigation that is
10      ongoing. Don't answer the question, Sergeant Valle.
11      **MR. GUIZAR:** Is there a group of deputies that work at the East L.A.
        station that align themselves with members of a deputy gang or clique known
12      as the Banditos?
13      **MR. KIZZIE:** Same objection. Instruct the witness not to answer. Don't
        answer the question, Sergeant Valle.
14      **MR. GUIZAR:** Do you know if any of the Banditos carry guns?
15      **MR. KIZZIE:** Same objection. Instruct the witness not to answer. Official
        information privilege.
16      **MR. GUIZAR:** Do the Banditos have a bad attitude towards deputies that do
17      not belong to the Banditos?
        **MR. KIZZIE:** Same objection. Instruct the witness not to answer. Official
18      information privilege. Information gleaned from the investigation itself.
19      **MR. GUIZAR:** Do you know if Deputy Rafael Munoz is a Bandito?
        **MR. KIZZIE:** Same objection. Instruct the witness not to answer.
20      **MR. GUIZAR:** Do you know if Deputy Gregory Rodriguez is a
21      Bandito?
        **MR. KIZZIE:** Same objection. Instruct the witness not to answer.
22      **Exhibit I-Valle Depo. Trans. Pg. 63/ln. 15- pg. 65/ln. 2.**

23

24      **2.   <u>DEFENDANTS DESIGNATED THE APPROPRIATE PMK</u>**

25      Here, Defendants designated the appropriate PMK regarding the subject

26  topic.

27      The testimony of a Rule 30(b)(6) designee "represents the knowledge of the

28  corporation, not of the individual deponents." *U.S. v. Taylor*, 166 F.R.D. at 361. A

1    Rule 30(b)(6) designee presents the corporation's position on the noticed topics. *U.S.*
2    *v. Massachusetts Indus. Finance Agency*, 162 F.R.D. at 412 (D.Mass.1995). A
3    corporation has a duty under Rule 30(b)(6) to provide a witness who is
4    knowledgeable in order to provide "binding answers on behalf of the corporation".
5    *Starlight International, Inc.*, 186 F.R.D. at 638 (D.Kan.1999).

6         A Rule 30(b)(6) designee is not required to have personal knowledge on the
7    designated subject matter. *Sprint Commc'ns Co., L.P.*, 236 F.R.D. at 528
8    (D.Kan.2006); *PPM Finance*, 297 F.Supp.2d at 1085–86 (N.D.Ill., 2004);
9    *Calzaturficio,* 201 F.R.D. at 37 (D.Mass.2001). Under Rule 30(b)(6), the party must
10   prepare the PMK so that they may give complete,  knowledgeable and binding
11   answers on behalf of the corporation or entity. *U.S. v. Taylor,* 166 F.R.D. at 360–61
12   (M.D.N.C.), aff'd, 166 F.R.D.

13        Here, Defendants prepared and presented the appropriate PMK so that they
14   may give complete, knowledgeable and binding answers on behalf of the
15   corporation or entity. For the aforementioned reasons, the fact that the PMK was
16   precluded from answering certain questions due to the pending investigation and
17   the Court's orders sustaining Defendants objections based on official information
18   privilege is of no consequence as it does not, in anyway, indicated that Sgt. Valle
19   was not prepared to knowledgably testify on the requested subject.

20        Further and for the aforementioned reasons, the fact that the deponent was
21   not able to knowledgably testify on a unrelated deputy gang/clique outside of East
22   Los Angeles station, *i.e.* the alleged Executioners *at Compton Station*, is also of no
23   consequence. **Exhibit H- Sgt. Valle Decl.** ¶ 7-8

24        Here, the fact that Sgt. Valle was recently appointed as the lead investigator
25   four (4) months ago due to the original investigator, Sgt. Jeff Hamil, being on
26   medical leave is also of no consequence. **Exhibit H- Sgt. Valle Decl.** ¶ 5 Sgt.
27   Hamil would have been subject to the same aforementioned official information
28   privilege objections.

Further, a Rule 30(b)(6) designee is not required to have personal knowledge on the designated subject matter. *Sprint Commc'ns Co., L.P.,* 236 F.R.D. at 528 (D.Kan.2006). Accordingly, there is no requirement under FRCP 30(b)(6) of a PMK deponent, Sgt. Valle, to have personal knowledge, which Sgt. Jeff Hamil would have.

Further, there is no case nor statutory authority that there is a minimum time period that a person is familiar with the PMK topic provided that the PMK is appropriately prepared so that they may give complete, knowledgeable and binding answers on behalf of the corporation or entity. *U.S. v. Taylor*, 166 F.R.D. at 360–61 (M.D.N.C.), aff'd, 166 F.R.D. Here, Sgt. Valle was fully prepared to answer whatever questions Plaintiff asked, whether or not an objection prevented such. Sgt. Valle personally conducted "intensive review of all of the thousands of pages and items of investigated materials requiring several hours spread across several weeks…" **Exhibit H- Sgt. Valle Decl. ¶ 7, 8, 10, 11 and 12.**

Sgt. Valle also testified to such:
**MR. GUIZAR:** Did you do anything to prepare for the deposition, sir?
**MR. KIZZIE:** You can answer.
**THE WITNESS:** Yes.
**MR. GUIZAR:** What did you do?
**THE WITNESS:** I read the case that was done before me.
**MR. GUIZAR:** What case is that?
**THE WITNESS:** This case. It's still actively going.
**MR. GUIZAR:** What is this case that's actively going? Are you talking about a broad investigation regarding the Banditos?
**THE WITNESS:** Yes.
**MR. GUIZAR:** Out of East L.A. station?
**THE WITNESS:** Yes.
**MR. GUIZAR:** Okay. And you read reports. Is that what you did?
**THE WITNESS:** Yes.
**Exhibit I-Valle Depo. Trans. Pg. 32/ln. 12- pg. 33/ln. 4.**

**JOINT DISCOVERY MOTION**

Here, Plaintiff's counsel was advise of all of the above *during the deposition:*

**MR. KIZZIE:** Okay. So one second. One second. I don't agree to go off the record just yet. In response to plaintiff counsel's statement Sergeant Valle is and has been produced as the person most knowledgeable on the topic noticed. **Such a designation is not contingent on the amount of time any person spent on something, whether the person was originally the person assigned to something or anything of that nature. Sergeant Valle as indicated has educated himself sufficiently to defense counsel's satisfaction and thus has been designated as the person most knowledgeable on this topic. The fact that plaintiff's counsel cannot get into the specifics of the investigation does not in any way impact his appropriate designation. The fact that he was assigned to the investigation four months ago does not in any way impact his designation. The fact that counsel's questions pertain to any matters pertaining to any station other than East L.A. station is not determinative as to whether Sergeant Valle has been properly designated. Defense counsel does not think that the appropriate questions frankly have been asked by plaintiff counsel to further flush out Sergeant Valle's appropriate designation and to the extent that plaintiff counsel argued that because Sergeant Valle can't answer questions pertaining to an ongoing investigation means that he's not most knowledgeable or that there's been some misconduct by the defendants in this matter is also not determinative nor is that agreed to by defendants' counsel.** So if plaintiff's counsel truly intends to adjourn the deposition then it is defendants' counsel's position that defendants have fully complied with our 30(b)(6) objections to produce a person most knowledgeable regarding the topic noticed and as discussed between defendants' and plaintiff's counsel on this topic. Whether or not plaintiff chooses to continue is solely on plaintiff's counsel and defendants will not absent a court order agree to produce Sergeant Valle or anyone for a -- or Sergeant Valle specifically for a second deposition on this topic nor agree to produce anyone else as a 30(b)(6) PMK on the topic that Sergeant Valle has been produced for and if plaintiff proceeds with any sort of motion on the topic it is our position it will have been brought knowingly in bad faith and we reserve the right to request sanctions. If plaintiff wishes to suspend the deposition then I think it should be clearly reflected in the record that plaintiff has had an adequate opportunity to ask Sergeant Valle whatever questions he wishes. Whether or not he gets an answer to those questions based on various privileges depends on the questions asked. So with that if plaintiff wishes to suspend the deposition or adjourn it that is plaintiff

**JOINT DISCOVERY MOTION**

counsel's call. **Exhibit I-Valle Depo. Trans. Pg. 90/ln. 2- pg. 92/ln. 6.**

**MR. KIZZIE: So it is plaintiff's counsel's opinion that the person most knowledgeable is not Sergeant Valle but that's simply his matter of opinion. It is not based in fact**. It is not based on any sufficiently asked questions during this deposition which has been conducted very poorly. I believe the record will speak for itself. However as stated earlier the fact that Sergeant Valle has been appointed as the lead person in this investigation four months ago does not in any logical fashion mean that the investigation was just started four months ago but plaintiff's counsel decided to not get into that. **Exhibit I-Valle Depo. Trans. Pg. 94/ln. 8-19**

Here, Sgt. Valle was an appropriately designated PMK. He was sufficiently educated and prepared to address the topic. As shown in the record, Plaintiff counsel's impatience, loss of temper, and/or frustration that Sgt. Valle could not answer information protected by official information privilege in compliance with this Court's discover orders does not reflect any willful failure to properly designate an appropriate PMK

3. <u>**DEFENDANTS OBJECT TO A SECOND DEPOSITION OR PMK DESIGNATION AND PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR THIS FRIVOLOUS MOTION DUE TO PLAINTIFF'S SQUANDERED DEPOSITION OPPORTUNITY AND REPEATED BAD-FAITH LITIGATION MISCONDUCT**</u>

Federal Rule of Civil Procedure 30(a)(2)(B) provides that a party must obtain leave of court before deposing an individual that has already been deposed in the case. Fed. R. Civ. P. 30(a)(2)(B). This Rule further provides that a court should consider the standards enunciated in Rule 26(b)(2) to determine whether to grant or deny leave. Fed. R. Civ. P. 30 (a)(2)(B). Rule 26(b)(2) gives courts the power to limit discovery if: (1) the proposed discovery is unreasonably cumulative or duplicative; (2) the information can be obtained from a more convenient, less burdensome, or less expensive source; (3) the party seeking the additional discovery has had ample opportunity to obtain the information sought; and (4) the

1   burden or expense of the proposed discovery does not exceed its likely benefit. Fed.

2   R. Civ. P. 26(b)(2). *See also Yourga v. City of Northampton*, No. CV 16-30167-

3   MGM, 2018 WL 1053532, at *5 (D. Mass. Feb. 26, 2018) (denying plaintiff's

4   request for a Rule 30(b)(6) deposition because plaintiff "has not adequately

5   supported his need for this information," plaintiff otherwise has had, on one issue,

6   an "adequate opportunity to explore [the] issue that appears marginal, at best, to his

7   claims," and, on another issue, "he can adequately explore [that] topic, which also

8   appears fairly marginal to his claims," at other depositions); *Jones v. Hernandez*,

9   No. 16-CV-1986-W(WVG), 2018 WL 539082, at *5 (S.D. Cal. Jan. 23, 2018),

10  objections overruled, No. 16-CV-1986 W (WVG), 2018 WL 1981207 (S.D. Cal.

11  Apr. 27, 2018) (granting defendants' request for a protective order on particular

12  topics because "[a]ny marginal value a deposition may have is heavily outweighed

13  by the burden it will impose"); *In re Katrina Canal Breaches Consol. Litig.*, No.

14  CIV.A. 05-4182, 2008 WL 4936734, at *3 (E.D. La. Aug. 11, 2008) (granting

15  defendant's request for protective order against deposition, likening plaintiff's effort

16  to "a sledgehammer to a nail," because "whatever marginal benefit Plaintiff thinks

17  he can derive" is not worth the "great expense and effort" of a deposition).

18      Here, Plaintiff had more than adequate opportunity to attempt to ask and

19  explore what questions *could* be answered by the deponent. *See generally* **Exhibit**

20  **I.** Indeed as set forth above, Defendants' counsel even made the good-faith effort to

21  suggest potential questions that may be answered for Plaintiff's counsel to flush out

22  Sgt. Valle's qualifications to serve as a PMK. *See generally* **Exhibit I.**  However,

23  the deposition transcript and video in its entirety shows that Plaintiff's deposition

24  was squandered solely due to Plaintiff counsel's bad temper and misconduct, which

25  does not justify nor in anyway merit a second bite at the apple nor that Sgt. Valle

26  nor Defendants' counsel should subject themselves to Plaintiff's counsel's repeated

27  abuse and discovery misconduct. *See generally* **Exhibit G- Sgt. Valle Depo.**

28  **Video**, **Exhibit H-Sgt. Valle Decl. ¶ 13-14**; **Exhibit I- Sgt. Valle Depo.**

**JOINT DISCOVERY MOTION**

**Transcript.**

The above evidence is only the latest federal deposition proceeding in which Plaintiff's counsel has gone off the rails. Indeed, Mr. Guizar has gone to great lengths to threaten and berate Defendants' counsel, Mr. Antonio K. Kizzie ("Mr. Kizzie"), and Mr. Kizzie's firm privately, publicly, via email and even during federal deposition proceedings.

As shown in the attached evidence, Mr. Guizar's misconduct during discovery, especially depositions, have been abhorrent, harassing, abusive, in violation of duties of civility, and has repeatedly, needlessly and significantly increased the cost of litigation requiring unnecessary expenditure of judicial and Defendants' time and tax payer resources to adjudicate various frivolous discovery motions and/or other motions. Further evidence of such is that counsel for the parties are contacting the Court on nearly a weekly basis regarding various discovery issues, including simple meet and confer requirements. Mr. Guizar has gone to great lengths to personally threaten and berate Defendants' counsel, Mr. Kizzie ("Mr. Kizzie"), and Mr. Kizzie's firm privately, publicly, via email and even during *federal deposition proceedings*.

Such instances include, but are not limited to, the following:

- During the June 18, 2020 deposition of Defendant Deputy Nikolis Perez ("Deputy Perez"), which was being taken by Mr. Guizar's colleague Mr. Kent Henderson who was also repeatedly abusive to Deputy Perez, Mr. Guizar abruptly and inappropriately interjected and called Defendants' counsel, Mr. Kizzie, a "smart ass" during a federal deposition proceeding. During Deputy Perez's same deposition, Mr. Guizar repeatedly continued to interject during the deposition, despite being neither the examining or defending deposition attorney, yelling and raising his voice at Defendants' counsel during a federal deposition proceeding. *See* **Exhibit M- Deputy Nikolis Perez Deposition.**

- Further evidence of Plaintiff's counsel's bad-faith conduct is that during

**JOINT DISCOVERY MOTION**

the May 28, 2020 federal deposition proceeding of Plaintiff Lisa Vargas Mr. Guizar was incredibly hostile on the record repeatedly berating Defendants' counsel stating inappropriate statements such as, "I'm going to sit here and let you do that crap?," "Counsel, you don't give a crap about what happened to her son," **Exhibit N- Plaintiff Lisa Vargas Deposition.**

- Mr. Guizar repeatedly losing his temper and devolving depositions into shouting matches. Further, during the July 13, 2020 federal deposition proceeding of Captain Richard Mejia, Mr. Guizar refused to show any decorum for a federal proceeding and continued to berate Defendants' counsel for stating simple objections making statements such as, "What is wrong with you?"  *See generally* **Exhibit G- Sgt. Valle Depo. Video, I-Sgt. Valle Depo. Transcript, M-Deputy Perez Depo., O- Captain Richard Mejia's Deposition**.

- Further evidence of Plaintiff's counsel's bad-faith conduct is that on or about May 28, 2020, Plaintiff's counsel, Mr. Humberto Guizar, has begun to harass Defendants' counsel's law firm partner, Mr. Rodney S. Diggs ("Mr. Diggs"), by posting false, libelous and defamatory statements about Defendants' counsel's firm and in potential violation of this Court's protective orders and orders regarding civility on Mr. Digg's Facebook page. Mr. Guizar's grievance is with the laws of evidence, privilege and the Court's discovery orders sustaining Defendants' objections, not Defendants' counsel or his firm for doing their job. The appropriate avenue to seek review is before the District Court, not on Facebook. To complain about this Court's order on such a public medium and falsely accuse Defendants' counsel of working "with the COLA to hide evidence that exists regarding the Bandidos gang" and that Defendants' "represented multiple deputies confirmed to be in other deputy gangs that have killed people" is outrageously unprofessional, false, libelous, and defamatory. On

June 1, 2020, Mr. Guizar was formally presented with the attached "Cease and Desist" letter by Defendants' counsel. *See generally* **Exhibit P**.

- Further evidence of Plaintiff's counsel's bad-faith conduct is that on August 6, 2020, Mr. Guizar privately emailed Defendants' counsel, Mr. Kizzie, referencing and attaching an unrelated lawsuit against Mr. Kizzie's law partner, Mr. Diggs, while implicitly back-handedly threatening an ability to "post this incendiary lawsuit on facebook" in order to damage Mr. Kizzie, personally, Mr. Kizzie's firm, to attempt to gain some leverage in this lawsuit, and/or attempt to obtain some sort of retribution against Mr. Kizzie and Mr. Kizzie's firm for the Court's ruling sustaining Defendants' privilege objections. *See generally* **Exhibit Q**.

- Further evidence of Plaintiff's counsel's bad-faith conduct is most recently **on August 18, 2020,** Mr. Guizar threatening to falsely and slanderously hold a press conference solely to state that Mr. Kizzie and Mr. Kizzie's firm "represent killer cops" in order to attempt to damage Defendants' counsel's firm's reputation in an attempt to gain some leverage in this lawsuit or retribution against Mr. Kizzie and Mr. Kizzie's firm for the Court's ruling sustaining Defendants' privilege objections. *See generally* **Exhibit R.**

- Further evidence of Plaintiff's counsel's bad-faith conduct is that on May 8, 2020, Mr. Guizar accused Defendants' counsel's secretary, Ms. Martha Carrillo, of lying under oath on a proof of service regarding the deposition of subpoena of Ms. Valentina Zapata ("Ms. Zapata"), and, to date, has never apologized. *See generally* **Exhibit T**.

- Further evidence of Plaintiff's counsel's wasteful litigation conduct is that on May 21, 2019, Defendants filed a Motion for a Stay of Litigation ("Motion") due to the pendency of various investigations at the very beginning of this action, which was supported by the Declaration of Detective Dean Camarillo attesting to such. *See generally* Dkt. 16 and 16-

**JOINT DISCOVERY MOTION**

1. Plaintiff vehemently opposed Defendants' Motion, and Defendants replied. *See generally* Dkt. 22 and 23. The Court denied Defendants' Motion. *See generally* Dkt. 26. Now, over a year later and despite hundreds of hours and thousands of dollars of tax-payer monies spent on the defense of this case, on July 28, 2020 Plaintiff then "flip-flopped" and moved ex parte for a stay of this action simply because Plaintiff disagreed with this Court's discovery ruling despite previously opposing Defendants' motion to stay and never timely and appropriate presenting them to the Court for review, which rendered Plaintiff's application patently frivolous on its face. *See generally* Dkt. 71.

- Further evidence and despite Plaintiff's counsel's representation to the Court that Defendants' counsel has allegedly repeatedly made meeting and conferring on discovery matters difficult, this Court is reminded that on August 10, 2020 Defendants' counsel had to "regretfully request the Court's assistance with a very simple issue to avoid unnecessary delay, which is Plaintiff's counsel's refusal to meet and confer with me regarding three (3) various discovery topics on Thursday, August, 13, 2020 despite our already having a telephonic meet and confer session on calendar for that same day." *See generally* **Exhibit U.**

- Nearly every discovery motions in this Court, including this one and the two (2) or three (3) other pending motions, have only been necessitated due to Plaintiff's counsel's frivolous and repeated attempts to obtain privileged discovery:

  o *See generally* Dkt. 43- Plaintiff's Joint Motion to Compel Defendant County of Los Angeles to Produce Documents. *See also* generally Dkt. 53 and 54- This Court's orders sustaining Defendants' official information and attorney work product privilege objections.

  o *See generally* Dkt. 51- Defendants' Motion for A Protective Order

**JOINT DISCOVERY MOTION**

against the Apex Deposition of Los Angeles County Sheriff Alexander Villanueva (based on apex deposition privilege).

o *See generally* Dkt. 52- Defendants' Motion for A Protective Order against the Deposition of Sgt. Jeremy Carr (based on official information privilege).

o *See generally* Dkt. 63- Defendants' Motion for A Protective Order against the Deposition PLAINTIFF'S NOTICE OF TAKING VIDEOTAPED DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE FROM THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, DETECTIVE DIVISION - HOMICIDE BUREAU, REGARDING THE INVESTIGATION OF THE DECEMBER 16, 2019 SHOOTING BY DEFENDANT NIKOLAS PEREZ OF JORGE ENRIQUE SERRANO ROBLES.

Here, the aforementioned list is by no means exhaustive, my merely illustrative. Plaintiff will no doubt attempt to point fingers, but cannot point to any occasion wherein Defendants' counsel cursed at or otherwise personally insulted Mr. Guizar during a federal deposition proceeding. Any other such instance was simply a response to Mr. Guizar's continued personal attacks and frivolous motions.

As shown in the attached evidence, Mr. Guizar's misconduct and bad-faith litigation tactics have repeatedly, needlessly and significantly increased the cost of litigation requiring unnecessary expenditure of judicial and Defendants' time and tax payer resources to adjudicate various frivolous discovery motions and/or other motions. Further evidence of such is that counsel for the parties are contacting the Court on nearly a weekly basis regarding various discovery issues, including simple meet and confer requirements.

Here and although Defendants understand the Court is usually reluctant to impose sanctions and Defendants regret having to request such a measure against a fellow officer of the court, Plaintiff counsel's, Mr. Humberto Guizar's ("Mr.

Guizar"), litigation and discovery conduct *throughout this action* has become *abhorrent, oppressive, intolerable and unacceptable* and has directly resulted in the unnecessary driving up of litigation costs and expenditure of judicial and party time and resources. Accordingly, imposition of financial sanctions against Mr. Guizar personal is the only way to stop Mr. Guizar's continued misconduct and abusive behavior of both the Court and Defendants' counsel.

28 U.S.C.A. § 1927 states, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Federal Rules of Civil Procedure 37 also authorizes a full range of sanctions— from fee awards to "terminating" sanctions—against parties or attorneys for violation of discovery orders or abusive conduct in the course of discovery proceedings.

Federal Rules of Civil Procedure 26(g) also authorizes this Court to issue monetary sanctions against attorneys in discovery proceedings who file a response lacking substantial justification.

Central District Court Local Rule 83-7 authorizes monetary sanctions authorized for "willful, grossly negligent, or reckless" violations of local rules, plus costs and fees to opposing counsel for "bad faith" conduct or willful disobedience of court order. Some federal courts have imposed sanctions for violation of applicable rules of professional conduct. *See Midwest Motor Sports v. Arctic Cat Sales, Inc*. (8th Cir. 2003) 347 F3d 693, 697 (Evidentiary sanction excluding information obtained by counsel in violation of state rule of professional conduct.)

Apart from any statute or rule, federal courts have inherent power to impose certain sanctions, including award of attorney fees for "bad faith" conduct. FDIC v. Maxxam, Inc. (5th Cir. 2008) 523 F3d 566, 590-593.

A "district court may ... award sanctions in the form of attorneys' fees against

a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon v. IDX Systems Corp*. (9th Cir. 2006) 464 F.3d 951, 961 (quoting, *Primus Auto. Fin. Servs. v. Batarse* (9th Cir. 1997), 115 F.3d 644, 648. Where a party's counsel is involved in bad faith tactics, Fed. R. Civ. P. 11(c) further authorizes the Court to enter an order for monetary sanctions.

As previously stated, Mr. Guizar's discovery conduct has been *abhorrent, oppressive, intolerable and unacceptable* and has directly resulted in the unnecessary driving up of litigation costs and expenditure of judicial and party time and resources. There is absolutely no reason for such misconduct by a seasoned attorney such as Mr. Guizar, and such must not be tolerated without consequence by this Court as the aforementioned list will only grow longer and longer and result in more and more frivolous discovery motions.

Plaintiff cannot show that Plaintiff was "substantially justified" in insisting on the filing of yet another frivolous discovery motion requiring expenditure of party and judicial time and resources. Accordingly, Defendant is entitled to and hereby requests reasonable sanctions in the amount of $7,140.00 against Plaintiff's counsel Mr. Guizar alone to discourage and hopefully stop Plaintiff's counsel's misconduct once and for all. Kizzie Decl. ¶ 17-28.

## 4. DEFENDANTS MUST NOT BE SANCTIONED AS DEFENDANTS APPROPRIATELY DESIGNATED A QUALIFIED PMK AND MERELY RELIED UPON THIS COURT'S ORDERS IN SUPPORT OF DEFENDANTS' OBJECTIONS

It should be clear to the Court based on Plaintiff's counsel's aforementioned a and documented pattern of conduct that Plaintiff's counsel's request for approximately $16,000 in financial sanctions for merely 10-13 pages of work and five (5) pages of exhibits under these circumstances is clearly for spite, in bad-faith, punitive in nature and altogether absurd.

The purpose of the rule is to "protect courts and opposing parties from delaying or harassing tactics during the discovery process." *Cunningham v. Hamilton C*ounty,

527 U.S. 198, 208, 119 S. Ct. 1915, 144 L.Ed. 2d 184 (1999). Rule 37 requires a court to impose sanctions upon the granting of a discovery motion, unless the court finds that the losing party's conduct was substantially justified. *Id*. at 208 n. 5. If the opposing party can demonstrate "substantial justification" for its nondisclosure or opposition, however, Rule 37 provides that the court must deny sanctions. Fed. R. Civ. P. 37(a)(5)(A)(ii).

"There is no bright line standard for 'substantial justification,' and courts must use discretion when deciding whether opposition to a motion to compel is substantially justified." *Brown v. State of Iowa*, 152 F.R.D. 168, 173 (S.D. Iowa 1993). "[C]ourts have generally focused on 'the quality of the justification and the genuineness of the dispute [and whether] an impartial observer would agree that a party had good reason to withhold discovery[ ]' when determining whether opposition is substantially justified." *Id*. (quoting *Alvarez v. Wallace*, 107 F.R.D. 658, 662 (W.D. Tex. 1985)). In addition to a party's substantial justification for opposing a motion, the court may also deny sanctions if the movant filed the motion before attempting in good faith to obtain the discovery without court action or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i) & (iii).

An award of expenses does not require a showing of willfulness or improper intent; rather, the standard is whether there was substantial justification for the losing party's conduct. FRCP 37(a)(5); *Reygo Pac. Corp. v. Johnston Pump Co*. (9th Cir. 1982) 680 F.2d 647, 649; *Sheppard v. River Valley Fitness One, L.P.* (1st Cir. 2005) 428 F.3d 1, 11.

Here and for the foregoing reasons, Defendants properly designated a FRCP 30(b)(6) witness, and were substantially justified in their objections to Plaintiff's deposition questions, which requires that Plaintiff's request for sanctions must be denied. Further, Plaintiff has not for purposes of this motion sufficiently articulated anywhere in this motion how Defendants' reliance on multiple, explicit Court orders

**JOINT DISCOVERY MOTION**

sustaining Defendants' official information privilege objections during deposition could possibly not be "substantially justified."

Moreover, as counsel's declaration indicates, he is an accomplished partner with "33 years" of experience of litigation experience. This motion, although made lengthy by the requirements of L.R. 37 could have been prepared by an attorney with significantly less experience.

Accordingly, Plaintiff's motion request for sanctions must be denied or, in the alternative, drastically reduced.

## IV.   PLAINTIFF'S CONCLUSION

Plaintiff has tried informally and through the discovery shown above to depose the proper PMK regarding the Banditos gang and other deputy gangs. Defendant intentionally produced a person that is not a PMK, but rather is an investigator. Plaintiff needs to depose the proper PMK so Plaintiff can properly prosecute this civil rights action.  A PMK witness that states he cannot say who the Banditos are is like no witness at all.

Plaintiff will not address the personal attacks and claims inserted by the defense, as such does not have anything substantive to do with the issue in this motion, which is whether the defense produced the proper PMK as suggested by the court.  Therefore, Plaintiff respectfully requests an order that requires the defendants to produce a witness that can testify as to who the Banditos are?  Also, Sanctions should be ordered against defendant County of Los Angeles and their counsel Antonio Kizzie.

**DEFENDANT'S CONCLUSION**

For the aforementioned reasons, this Court is respectfully requested to again sustain Defendants' objections based on the aforementioned privileges and impose payment of monetary sanctions against Plaintiff's counsel as requested herein.

Dated: August 25, 2020                    **GUIZAR, HENDERSON & CARRAZCO,**

42

**LLP**

By: _____/s/_____
        HUMBERTO GUIZAR
        Attorneys for Plaintiff
        LISA VARGAS

Dated:  August 24, 2020    **IVIE McNEILL WYATT PURCELL & DIGGS, APLC**

        By:   */s/ Antonio K. Kizzie*
           **RICKEY IVIE**
           **ANTONIO K. KIZZIE**
           **JACK F. ALTURA**
           **Attorneys for Defendant,**
           **COUNTY OF LOS ANGELES**

      Pursuant to Local Rule 5-4.3.4 (a)(2)(i), I, Humberto Guizar, do hereby attest that all of the signatories listed on this motion, and on whose behalf the filing is submitted, concur in the filing's content and authorize the filing of this motion.

        */s/ Humberto Guizar*
        Humberto Guizar

**JOINT DISCOVERY MOTION**