**RICKEY IVIE, ESQ. (SBN 76864)**
rivie@imwlaw.com
**MARINA SAMSON, ESQ. (SBN 315024)**
msamson@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 S. Flower Street, 18th Floor
Los Angeles, CA  90017-2919
Telephone:  (213) 489-0028
Facsimile:   (213) 489-0552

Attorneys for Defendants, **COUNTY OF LOS ANGELES, et al.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA VARGAS,<br><br>        *Plaintiffs,*<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et.al.,<br><br>        *Defendants.* | Case No.: 2:19-cv-03279-MEMF-AS<br>*[Hon. Maame Ewusi-Mensah Frimpong, United States District Judge]*<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Pre-Trial Conference:**<br>Date: November 9, 2022<br>Time: 9:00 a.m.<br>Place: Courtroom 8B<br><br>**Trial:**<br>Date: November 28, 2022<br>Time: 8:30 a.m.<br>Place: Courtroom 8B |

**TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendants COUNTY OF LOS ANGELES ("COLA"), DEPUTY JONATHAN ROJAS ("DEPUTY ROJAS"), and DEPUTY NIKOLIS PEREZ ("DEPUTY PEREZ") ("Defendant Deputies," collectively) or ("Defendants" collectively) will and hereby submit the following Memorandum of Contentions of Fact and Law.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF CONTENTS

I.    **CLAIMS AND DEFENSES** ……………………………………………..1

    A.    **Summary Statement of Existing Claims** ……………………….. 1

    B.    **Elements Required to Establish Existing Claims** ………………… 3

        (a)    **Plaintiffs have pleaded and plan to pursue the following claims:** …………………………………………………………...3

        (b)    **The elements required to establish Plaintiffs' claims are as follows:** ……………………………………………………...3

    C.    **Key Evidence to Defeat Plaintiff's Claims** …………………....7

    D.    **Defendants' Counter-Claims and Affirmative Defenses** …………9

    E.    **Elements Required To Prove Affirmative Defenses Failure to Mitigate Damages** …………………………………………………...9

    F.    **Evidence Relied Upon in Support of Each Counter-Claim and Affirmative Defense** …………………………………………….10

    G.    **SIMILAR STATEMENTS OF THIRD PARTIES** ………………11

    H.    **IDENTIFICATION OF ANY ANTICIPATED EVIDENTIARY ISSUES AND PARTY'S POSITION** ……………………………….11

    I.    **IDENTIFICATION OF ANY ISSUES OF LAW** ………………...12

        a.    **THE NUMBER OF BULLETS FIRED IS IRRELEVANT** ……………………………………………...12

        b.    **ALLEGED LACK OF A WARNING THAT "WE'LL SHOOT" IS IRRELEVANT AND NOT DETERMINATIVE** ……………………………………...13

        c.    **JUSTIFIABLE HOMICIDE** ………………………….14

| | | |
|---|---|---|
| II. | **BIFURCATION OF ISSUES** | …………………………………………………15 |
| III. | **JURY TRIAL** | ………………………………………………………………..15 |
| IV. | **ATTORNEY FEES** | ………………………………………………………….16 |
| V. | **ABANDONED CLAIM** | …………………………………………………..16 |

## I. CLAIMS AND DEFENSES

### A. Summary Statement of Existing Claims

This case arises out of a deputy-involved shooting of Mr. Anthony Vargas ("Mr. Vargas" or "Decedent") by Defendants Los Angeles County Sheriff's Deputy Nikolis Perez ("Deputy Perez") and Deputy Jonathan Rojas ("Deputy Rojas," "Defendants," collectively) that occurred on August 12, 2018 in the Nueva Maravilla Housing Community in East Los Angeles. On August 12, 2018 at approximately 2:00 a.m., Defendants responded to a 911 call by Ms. Valentina Zapata ("Ms. Zapata") of an armed robbery at gunpoint of her boyfriend, Mr. David Hill ("Mr. Hill"), by a male Hispanic in his 30s wearing a blue shirt that had recently taken place at or near the Nueva Maravilla Housing Community.

Defendants' use of deadly force against Mr. Vargas was objectively reasonable under the totality of the circumstances because Mr. Vargas fit the 911 caller's description of the armed robbery suspect (male, Hispanic, wearing a blue shirt), was being detained by Defendants upon suspicion of committing an armed robbery (a felony and serious crime), was attempting to flee and/or resist detention/potential arrest by Defendants, was armed, was an imminent threat of death or serious bodily harm to Defendants when Mr. Vargas grabbed and attempted to shoot Deputy Rojas with a handgun, and there is no admissible evidence of a dispute of material fact, nor was it clearly established that using deadly force would violate Decedent's rights under the circumstances facing Defendants. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

On August 19, 2019, Plaintiff Lisa Vargas ("Plaintiff") filed the instant First Amended Complaint ("FAC") alleging six (6) causes of action: battery (wrongful death), negligence (wrongful death), violation of Cal. Civ. Code § 52.1 ("Bane Act"), unreasonable search/seizure- excessive force & denial of medical care (42 U.S.C. § 1983), substantive due process- deprivation of familial relations (42 U.S.C.

§ 1983), and municipal liability- custom/practice/ policy (42 U.S.C. § 1983) against Defendants. *See generally* Dkt. 28.

Based on Plaintiff's First Amended Complaint for Damages and the Court's ruling on Defendants' motion for summary judgment/adjudication (Dkt. 159), the remaining issues in this case are:

1. Whether Deputy Jonathan Rojas used excessive (42 U.S.C. § 1983) or unreasonable force (Battery) against the decedent;

2. Whether Deputy Nikolis Perez used excessive (42 U.S.C. § 1983) or unreasonable force (Battery) against the decedent;

3. Whether Deputy Jonathan Rojas acted with a purpose to harm the decedent unrelated to any legitimate law enforcement objective;

4. Whether Deputy Nikolis Perez acted with a purpose to harm the decedent unrelated to any legitimate law enforcement objective;

5. Whether Deputy Jonathan Rojas violated the Bane Act;

6. Whether Deputy Nikolis Perez violated the Bane Act;

7. Whether Deputy Jonathan Rojas was negligent;

9. Whether Deputy Nikolis Perez was negligent;

10. The nature and extent of the Decedent's damages;

11. The nature and extent of the Plaintiff's damages;

12. Whether the conduct of Deputy Jonathan Rojas was malicious, oppressive, or in reckless disregard of the decedent's or the plaintiffs' rights; and

13. Whether the conduct of Deputy Nikolis Perez was malicious, oppressive, or in reckless disregard of the decedent's or the plaintiffs' rights;

14. Whether Defendants used force in Self-Defense/Defense of Others.

15. Whether Anthony Vargas was comparatively negligent.

16. Whether Plaintiff failed to mitigate her damages.

///

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

B. **Elements Required to Establish Existing Claims**

    **(a)** **Plaintiffs have pleaded and plan to pursue the following claims:**

Claim 1:    First Cause of Action ("COA") for Battery (wrongful death);

Claim 2:    Second COA for Negligence (Wrongful Death);

Claim 3:    Third COA for violation of the Bane Act (Cal. Civ. § 52.1)

Claim 4:    Fourth COA for of 42 U.S.C. § 1983- Excessive Force

Claim 5:    Fifth COA for violation of 42 U.S.C. § 1983- Substantive Due Process.

    **(b)** **The elements required to establish Plaintiffs' claims are as follows:**

Claim 1:    **BATTERY BY A PEACE OFFICER (CACI 1305)**

1)    That Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas intentionally touched Anthony Vargas or caused him to be touched.

2)    That Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas used unreasonable force to arrest/detain, prevent the escape of, or overcome the resistance of Anthony Vargas;

3)    Anthony Vargas did not consent to the use of that force;

4)    Anthony Vargas was harmed;

5)    Defendants, Deputy Nikolas Perez's and Deputy Jonathan Rojas' use of unreasonable force was a substantial factor in causing Plaintiffs' harm.

Claim 2:    **NEGLIGENCE (CACI 440)**

1)    Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas were negligent;

2)    Anthony Vargas was harmed; 3) Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas' negligence was a substantial factor in causing Anthony Vargas's harm.

Claim 3: **BANE ACT (CAL. CIV. § 52.1) (CACI 3066)**

1) That Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas acted violently against Anthony Vargas to prevent him from exercising a right.[1] Defendants object to the language "be free from unreasonable seizures" in Element No. 1. Reasonable suspicion existed to detain Anthony Vargas. Accordingly, Anthony Vargas was not being unreasonably seized and did not have such a right to resist lawful detention at that time.

2) That Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas intended to deprive Anthony Vargas of his enjoyment of the interests protected by the right. [1]

3) That Anthony Vargas was harmed; and

4) That Defendants Deputy Nikolas Perez and Deputy Jonathan Rojas conduct was a substantial factor in causing Anthony Vargas' harm.

CLAIM 4: **42 U.S.C. § 1983- EXCESSIVE FORCE (NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS, NO. 9.25)**

**Elements – Individual Capacity Liability**

In order to prevail on their §1983 claim against the defendants, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. The defendant acted under color of law; and

2. The act[s] of the defendant deprived the [Decedent] of his particular rights under the laws of the United States.

*See* Ninth Circuit Manual of Model Jury Instructions 9.2 §1983 Claim Against Defendant in Individual Capacity – Elements and Burden of Proof.

---

[1] Defendants request that Plaintiff be required to specifically articulate what right Defendants allegedly prevented Anthony Vargas from exercising. Defendants object to the language "be free from unreasonable seizures." It is not disputed in any cause of action that reasonable suspicion existed to detain Anthony Vargas. Accordingly, Anthony Vargas was not being unreasonably seized and did not have such a right to resist lawful detention at that time.

1)      Defendants NIKOLAS PEREZ and OFFICER JONATHAN ROJAS used excessive force against Plaintiff's Decedent, Anthony Vargas;

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force [in making a lawful arrest] [and] [or] [in defending [himself] [herself] [others]] [and] [or] [in attempting to stop a fleeing or escaping suspect]. Therefore, to establish an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer[s] used excessive force when [insert factual basis of claim].

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

(1)     the nature of the crime or other circumstances known to the officer[s] at the time force was applied;

(2)     whether the [plaintiff] [decedent] posed an immediate threat to the safety of the officer[s] or to others;

[(3)    whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;]

(4)     the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5)     the type and amount of force used;

[(6)  the availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff;]]

[(7)  the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;]

[(8)  whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;]

[(9)  whether the officer[s] [was] [were] responding to a domestic violence disturbance;]

[(10)  whether it should have been apparent to the officer[s] that the person [he] [she] [they] used force against was emotionally disturbed;]

[(11)  whether a reasonable officer would have or should have accurately perceived a mistaken fact;]

[(12)  whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm; and]

[(13)  insert other factors particular to the case.]

2)  The excessive force was a cause of injury, damage, loss, or harm to Plaintiff. *See* Ninth Circuit Manual of Model Jury Instructions 9.2, 9.3, and 9.25.

Claim 5:    **42 U.S.C. § 1983- SUBSTANTIVE DUE PROCESS**

For a substantive due process claim, plaintiff must prove:

(1)  They were deprived of a fundamental liberty interest; *and*

(2)  Defendants' actions were so "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," and "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *FDIC v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991.

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

"[i]t is well settled that negligence is not sufficient to shock the conscience," and that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) In determining whether the deputies' conduct "shocks the conscience," the court must first decide which "standard of culpability" applies. *Wilkinson v. Torres* (9th Cir.2010) 610 F.3d 546, 554.

The appropriate standard of culpability depends upon the type of situation that defendant is in at the time of the challenged action. If the deputy found himself in a situation where "actual deliberation is practical," then his "deliberate indifference" to the harm he caused may be sufficient to shock the conscience. *Gantt v. City of Los Angeles* (9th Cir.2013) 717 F.3d 702, 707–08.

On the other hand, if a deputy made a "snap judgment" because he found himself in an "escalating" and/or "fast paced" situation "presenting competing public safety obligations," then his conduct will not shock the conscience unless he acted "with a purpose to harm" decedent that was "unrelated to legitimate law enforcement objectives." *Id.*; *Porter v. Osborn*, 546 F.3d 1131, 1136, 39 (9th Cir. 2008)

Here and because the aforementioned facts of the rapidly evolving situation and sudden movement of Mr. Vargas in grabbing the gun required a split-second decision by Defendants, the "purpose to harm" standard must apply.

C.  **Key Evidence to Defeat Plaintiff's Claims**

**Key Testimony:**

1. Defendant Nikolas Perez
2. Defendant Jonathan Rojas
3. Dr. Timothy Dutra,
4. Detective Dean Camarillo

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

5. Sgt. Robert Martindale
6. Samantha Ingalls
7. Ilene Krokaugger
8. Jenny Mak
9. Deputy Adrian Rendon
10. Sgt. Sara Rodriguez
11. Carlos Alfredo Estrada
12. Valentina Zapata
13. Los Angeles Coroner criminalist C. Dal Chele
14. Los Angeles Coroner criminalist J. Posada
15. Deputy Johnny Kang
16. Dr. Marvin Pietruszka, M.D.
17. Mr. Rocky Edwards
18. Comm. J. Gil Jurado

**Key Documents and Other Evidence:**

1. Surveillance Camera Recordings of Incident and Still Images from Recordings
2. Photographs of Scene of Shooting Incident
3. Photographs of Evidence at Scene of Shooting Incident
4. Photographs of Decedent at Scene of Shooting Incident
5. Photographs of Bullet Impacts/Strikes at Scene of Shooting Incident
6. Autopsy Photographs
7. Decedent's Toxicology Report
8. Audio Recordings of Radio/Dispatch Communications;
9. Audio Recording/Transcripts of Los Angeles County Sheriff's Department Interviews of Involved Shooting Deputies and Witnesses
10. Incident Details/History Reports

11. Excerpts from Los Angeles County Sheriff's Department Policy Manual

12. Excerpts from P.O.S.T. Learning Domain 20

13. Autopsy Report and Diagrams

14. Los Angeles County Sheriff's Department Reports and Records Pertaining to the Shooting Incident

15. Scene Diagrams

16. Plaintiff's Responses to Defendants' Requests for Admission

17. Plaintiff's Responses to Defendants' Special Interrogatories

18. Supplementary Reports from investigation of Incident

19. Audio dispatch of 911 call.

20. Laboratory Examination Reports

### D. Defendants' Counter-Claims and Affirmative Defenses

Defendants intend to pursue the following affirmative defenses as to each of Plaintiffs' claims as set forth in Defendants' Answer to Plaintiff's First Amended Complaint (Dkt. 37):

1. **Third Affirmative Defense** - Plaintiff's Failure to Mitigate Damages
2. **Fifth Affirmative Defense** - Self-Defense/Defense of Others
3. **Thirtieth Affirmative Defense** - Comparative Negligence

### E. Elements Required To Prove Affirmative Defenses

**Failure to Mitigate Damages**

1. That the plaintiff failed to use reasonable efforts to mitigate damages; and

2. The amount by which damages would have been mitigated.

*See* Ninth Cir. Model Jury Instructions No. 5.3 DAMAGES—MITIGATION

///

**Self-Defense/Defense of Others**

1. That [*name of defendant*] reasonably believed that [*name of plaintiff*] was going to harm [him/her/[*insert identification of other person*]]; and

2. That [*name of defendant*] used only the amount of force that was reasonably necessary to protect [himself/herself/[*insert identification of other person*]].

*See* CACI Jury Instructions No. 1304 Affirmative Defense—Self-Defense/Defense of Others

**Comparative Negligence**

1. That [name of plaintiff] was negligent; and

2. That [name of plaintiff]'s negligence was a substantial factor in causing [his/her] harm

CACI JURY INSTRUCTION NO. 405. Comparative Fault of Plaintiff

**F.  Evidence Relied Upon in Support of Each Counter-Claim and Affirmative Defense**

**Failure to Mitigate Damages**

Defendants' Testimony/Defendants' Expert's Testimony/Surveillance Footage- Defendants should not be liable nor pay damages due to the Decedent's own reckless and dangerous conduct. The Decedent and Plaintiff failed to mitigate their own damages by the Decedent's actions placing the Defendants in a position where deadly force was needed to protect their lives and the lives of the public. Further, Plaintiff failed to mitigate her own damages to her relationship with the Decedent by abusing him to such an extent that he was permanently removed from her custody until he reached the age of majority.

**Comparative Negligence**

Defendants' Testimony/Defendants' Expert's Testimony/Surveillance Footage- Defendants should not be liable nor pay damages due to the Decedent's own reckless and dangerous conduct. The Decedent and Plaintiff failed to mitigate

their own damages and were comparatively negligent by the Decedent's actions placing the Defendants in a position where deadly force was needed to protect their lives and the lives of the public.

**Self-Defense/Defense of Others**

Defendants' Testimony/Defendants' Experts Testimony/Surveillance Footage- Defendants should not be liable nor pay damages due to the Decedent's own reckless and dangerous conduct. The Decedent and Plaintiff failed to mitigate their own damages and were comparatively negligent by the Decedent's actions placing the Defendants in a position where deadly force was needed to protect their lives and the lives of the public.

G. **SIMILAR STATEMENTS OF THIRD PARTIES**

There are no third parties.

H. **IDENTIFICATION OF ANY ANTICIPATED EVIDENTIARY ISSUES AND PARTY'S POSITION**

All evidentiary issues currently known to Defendants are asserted in the pending motions *in limine* filed by the parties, and will be asserted as to exhibits in the Pretrial Conference Order. Defendant has moved *in limine* to exclude the following evidence:

1. Defendants' Motion *in Limine* No. 1 to exclude various evidence referring to "Banditos"

2. Defendants' Motion *in Limine* No. 2 to exclude Plaintiff's Expert Theron L. Vines, III

3. Defendants' Motion *in Limine* No. 3 to exclude Plaintiff's Expert Okorie Okorocha

4. Defendants' Motion *in Limine* No. 4 to exclude Plaintiff's Expert Jesse Wobbrock

5. Defendants' Motion *in Limine* No. 5 to exclude Plaintiff's Expert Scott Defoe

6. Defendants' Motion *in Limine* No. 6 to exclude argument that Defendants "Planted" a gun

7. Defendants' Motion *in Limine* No. 7 to exclude evidence of prior or subsequent uses of force, lawsuits or bad acts

8. Defendants' Motion *in Limine* No. 8 to exclude argument that Defendants "Murdered" Decedent and Force Unreasonable Due to Number of Gunshots

9. Defendants' Motion *in Limine* No. 9 to exclude Untimely Disclosed Witnesses and Argument of Witness Intimidation

10. Defendants' Motion *in Limine* No. 10 to exclude Decedent's Baby Pictures, Religion, and Graphic Photographs

11. Defendants' Motion *in Limine* No. 11 to Bifurcate Trial

12. Defendants' Motion *in Limine* No. 12 to Preclude Evidence of Damages Not Disclosed in a Computation

13. Potential FRCP 50 motion for Judgment as a Matter of Law.

## I. IDENTIFICATION OF ANY ISSUES OF LAW

### a. THE NUMBER OF BULLETS FIRED IS IRRELEVANT

Plaintiff contends that the number of bullets fired was unreasonable. Plaintiff's argument is a misstatement of law. The United States Supreme Court recently rejected another similar argument of "even if [the officers were] permitted to fire their weapons, they went too far when they fired as many rounds as they did" when it said:

> It makes sense that, if officers are justified in firing at a suspect in order to end a severe threat to public safety, they need not stop shooting until the threat has ended…. It makes sense that, if officers are justified in firing at a suspect

in order to end a severe threat to public safety, they need not stop shooting until the threat has ended. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2015, 2016 (2014).

The central inquiry is not the amount of bullets fired, it is whether the perceived threat ended. Id. (noting further "if lethal force is justified, officers are taught to keep shooting until the threat is over."); *see., e.g, Medina v. Cnty of San Diego* 2012 WL 1033019 *5 (S.D. Cal. 2012) (Dismissing plaintiff's claim even though officers fired 37 rounds because plaintiff could not show that a reasonable officer would not have perceived a deadly threat).

As a matter of law, Defendants did not have to stop shooting until the threat ended. *Plumhoff,* 132 S.C.t at 2016. Here, both Defendants stopped when they perceived the threat had subsided, which is all the fourth amendment required.

### b. ALLEGED LACK OF A WARNING THAT "WE'LL SHOOT" IS IRRELEVANT AND NOT DETERMINATIVE

Although warnings to drop the gun were given here, there is no *per se* requirement for a warning of "we'll shoot" prior to the use of lethal force, as a matter of law.2 *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (warning required only "where feasible" to the prevent the escape of a suspect who "poses no immediate threat to the officer and no threat to others"); *Garcia v. United States*, 826 F.2d 806, 812 (9th Cir. 1987) (distinguishing Garner and holding that no warning required under constitution); *Liebenstein v. Crowe*, 826 F.Supp. 174, 1185 (E.D. Wis. 1992) (concluding that neither case law nor statute confers on a suspect the right to be warned before use of deadly force)."

Further and to the extent Plaintiff tries to argue such, Defendants gave orders to Plaintiff of the threat of force. As should be determined here, the *Cosentino* Court held:

"Plaintiffs make much out of the fact that the Officers did not actually warn that deadly force would be forthcoming. (Id. at 24, 30.) The Court is not convinced by this argument. As the officers noted in their testimony, they had their weapons drawn and pointed at Bours as they were issuing their command. There was nothing ambiguous about what they wanted or the potential consequences of a failure to adhere to the command. On the basis of the undisputed facts, including the Dashboard Video, the warnings given were appropriate given the encounter." *Cosentino, supra*, at * 8.

The *Cosentino* Court noted that "Plaintiffs cite no case establishing that officers, in the circumstances of this case, must literally warn the use of deadly force." (Id.) Moreover, the Court was "aware of no authority mandating the literal words officers must use in the short heat of the moment, facing an immediate threat." (Id.).

The instant case is not a situation where an unarmed citizen was shot, thus, bringing into question the defendant peace officer's reasonableness of their belief that the suspect was armed and the use of deadly force. Here, Defendants faced a fluid, dangerous and rapidly evolving situation in a densely populated involving an undisputedly armed suspect who grabbed the gun in his waistband.

c. **JUSTIFIABLE HOMICIDE**

The state causes of action are contingent upon whether the Defendants' use of lethal force was objectively reasonable under the circumstances. California *Penal Code* § 196 (Justifiable homicide; public officers) provides in relevant part:

> "Homicide is justifiable when committed by public officers and those acting by their command in their aid and assistance, either–
> 1. When necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty; or,

    2.    When necessarily committed in retaking felons who have been rescued or have escaped, or when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest." *Penal Code* § 196.

There can be no civil liability in California as the result of an objectively reasonable and justifiable homicide. Under California law, an officer may use deadly force to effect an arrest "only if the felony for which the arrest is sought is a 'forcible, and atrocious one which threatens death or serious bodily harm, or there are other circumstances which reasonably create a fear of death or serious bodily harm to the officer or to another.'" *Ting v. United States* 927 F.2d 1504, 1514 (9th Cir.1991) (quoting *Kortum v. Alkire* (1977) 69 Cal.App.3d 325, 333, (interpreting *Penal Code* § 196).

Consequently, the issue here is: Whether it was *reasonable* for Defendants to shoot Mr. Vargas after Mr. Vargas grabbed and attempted to pull a gun on them during the incident. The text of the Fourth Amendment indicates the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983); *United States v. Martinez–Fuerte*, 428 U.S. 543, 556–57 n. 12, 96 S.Ct. 3074, 3082 n. 12, 49 L.Ed.2d 1116 (1976).

## II.   BIFURCATION OF ISSUES

Defendants request bifurcation of issues and the trial into two phases as follows:

    Phase 1:    Liability + Predicate Questions re: Punitive Damages

    Phase 2:    Damages and Punitive Damages, if Needed

## III.   JURY TRIAL

All parties made timely demands for a jury trial. Defendant believes trial may take five (5) days, not including jury selection and deliberations.

IV. **ATTORNEY FEES**

All parties seek attorney's fees and costs under 42 U.S.C. § 1988.

V. **ABANDONED CLAIMS**

Plaintiff has abandoned claims that Defendants failed to provide/intervene or interfere with providing medical care to the Decedent.

Dated:  October 12, 2022                        **IVIE McNEILL WYATT**
                                                **PURCELL & DIGGS**

                                    By:   */s Marina Samson*
                                          **RICKEY IVIE**
                                          **MARINA SAMSON**
                                          Attorneys for Defendants,
                                          **COUNTY OF LOS ANGELES, et al.**