**RICKEY IVIE, ESQ. (SBN 76864)**
*rivie@imwlaw.com*
**MARINA SAMSON, ESQ. (SBN 315024)**
*msamson@imwlaw.com*
**IVIE McNEILL WYATT PURCELL & DIGGS**
**A Professional Law Corporation**
444 South Flower Street, Suite 1800
Los Angeles, CA  90071-2919
Telephone:   (213) 489-0028
Facsimile:    (213) 489-0552

Attorneys for Defendants, **COUNTY OF LOS ANGELES, et al.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA VARGAS,<br><br>        *Plaintiffs,*<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, NIKOLIS PEREZ, JONATHAN ROJAS, and DOES 1 through 10, inclusive,<br><br>        *Defendants.* | **Case No.: 2:19-cv-03279-MEMF-AS**<br>*[Hon. Maame Ewusi-Mensah Frimpong, United States District Judge]*<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Trial Date:    April 6, 2023<br>Time:            8:00 a.m.<br>Courtroom:    8B |

**TO HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** Defendants County of Los Angeles, Deputy Nikolis Perez ("Deputy Perez") and Deputy Jonathan Rojas ("Deputy Rojas," "Defendants," collectively) will and hereby do move the Court for judgment

as a matter of law pursuant to Federal Rules of Civil Procedure, Rule 50(a)(1) and Rule 50(b)(3). This motion shall be based upon this notice of motion, the motion for judgment as a matter of law, the accompanying memorandum of points and authorities, the attached Declarations, the attached exhibits, the pleadings and papers on file herein, and such written material and oral argument as may be presented at the hearing of this motion.

Dated:  April 18, 2023

IVIE McNEILL WYATT
PURCELL & DIGGS

By:  */s/ Marina Samson*
RICKEY IVIE
MARINA SAMSON
Attorneys for Defendants,
**County of Los Angeles, et al.**

## <u>TABLE OF CONTENTS</u>

**MEMORANDUM OF POINTS AND AUTHORITIES** ...............................1

**I.   INTRODUCTION** ...................................................1

**II.  FACTS** ...........................................................1

**III. LEGAL AUTHORITY** ............................................8

**IV.  ARGUMENT** .....................................................9

    **A.   Defendant Deputies Are Entitled to Judgment as a Matter of Law as to Plaintiff's Claim for Excessive Use of Force Under 42 U.S.C. § 1983** ............................................................9

    **B.   Defendants Are Entitled to Judgment as a Matter of Law as to Plaintiff's Claims for Assault, Battery, Negligence, and the Bane Act Under State Law** ...........................................15

        **1.   Battery Claim** .....................................15

        **2.   Negligence Claim** ................................15

    **C.   Bane Act** ...............................................17

    **D.   Defendants Are Entitled To Qualified Immunity** .................17

**V.   CONCLUSION** ....................................................19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acri v. Varian Assocs. Inc.*,
114 F.3d 999, 1000 (9th Cir. 1997) .................................................12

*Anderson v. Creighton*,
483 U.S. 635, 640 (1987)..............................................................18

*Ashcroft v. al-Kidd*,
563 U.S. 731, 741 (2011) ..............................................................18

*Atkinson v. Cnty. of Tulare*,
790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) .............................. 15, 16

*Brosseau v. Haugen*,
543 U.S. 194, 198 (2004)..............................................................18

*Blanford v. Sacramento Cnty.*,
406 F.3d 1110, 1116 (9th Cir. 2005) ...............................................12

*Blankenhorn v. City of Orange*,
485 F.3d 463, 480 (9th Cir. 2007) ...................................................13

*Carter v. City of Carlsbad*,
799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011)...................................16

*Cornell v. City & Cty. of S.F.*,
17 Cal. App. 5th 766, 801–02 (2017) ..............................................17

*Cosentino v. Kurtz*,
2013 U.S. Dist. LEXIS 69218 (C.D. Cal. Apr. 16, 2013) ....................12

*County of Los Angeles v. Mendez*,
137 S. Ct. 1539, 1546-1547 (2017)..................................................13

*David v. City of Fremont*,
2006 U.S. Dist. LEXIS 57211, 51-52 (N.D. Cal. July 31, 2006) .................. 12, 16

*D.C. v. Wesby*,
138 S. Ct. 577, 589-90 (2018)..................................................................18

*Edson v. City of Anaheim*
(1998) 63 Cal. App. 4th 1269 ................................................. 10, 15, 16

*Fogel v. Collins*,
531 F.3d 824, 833 (9th Cir. 2008)............................................................18

*Garcia v. United States*,
826 F.2d 806, 812 (9th Cir. 1987) ..........................................................13

*George v. Morris*,
736 F.3d 829 (9th Cir. 2013) ..................................................................14

*Gilbrook v. City of Westminster*,
177 F.3d 839, 864 (9th Cir. 1999) .............................................................9

*Graham v. Conner*,
490 U.S. 386, 396, 104 L Ed. 2d 443, 109 S. Ct. 1865 (1989)............... 9, 10, 11, 16

*Grundt v. City of Los Angeles*,
2 Cal.3d 575, 587 (1970) ........................................................................15

*Haberthur v. City of Raymore*,
119 F. 3d 720, 723 98th Cir, 1997).........................................................11

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982)........................................................................17

*Hernandez v. City of Pomona*
(S. Ct. Cal. 2009) 46 Cal.4th 501...........................................................16

*Inouye v. Kemna*,
504 F.3d 705, 712 (9th Cir. 2007) ..........................................................18

*Kisela v. Hughes*,
138 S. Ct. 1148, 1153 (2018)..................................................................18

- 2 -

*Martinez v. Cty. of Los Angeles*,
47 Cal.App.4th 334, 345 (1996) ................................................................14

*Monzon v. City of Murrieta*,
No. 19-55164, 2020 WL 6293163, at *5 (9th Cir. Oct. 27, 2020) ..................10

*Munoz v. City of Union City*
120 Cal.App.4th 1077, 1102 (2004) ..................................................... 15, 16

*Palacios v. City of Oakland*,
970 F. Supp. 732, 740 (N.D. Cal. 1997) .......................................................9

*Pavao v. Pagay*,
307 F.3d 915, 918 (9th Cir. 2002) ................................................................8

*Reese v. Cty. of Sacramento*,
888 F.3d 1030, 1043 (9th Cir. 2018) ...........................................................17

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133, ..............................................................................................8

*Reichle v. Howards*,
566 U.S. 658, 664 (2012) ............................................................................18

*Reynolds v. County of San Diego*,
84 F.3d 1162, 1168 (9th Cir. 1996) .............................................................12

*Saman v. Robbins*,
173 F.3d 1150, 1157 n.6 (9th Cir. 1999) ......................................................15

*Saucier v. Katz*,
533 U. S. 194, 207, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ............... 13, 17

*Scott v. Heinrich*,
39 F. 3d 912, 915 (9th Cir. 1994) ........................................................... 11, 12

*Smith v. City of Hemet*,
394 F.3d 689, 704 (9th Cir. 2005) ...............................................................12

- 3 -

*Stanley v. County of San Diego*
(S.D.Cal. Jan. 23, 2018, No. 16cv1227-MMA (AGS)) 2018 U.S.Dist.LEXIS
10936, at *26.) ...................................................................................15

*Tennessee v. Garner*,
471 U.S. 1, 11 (1985).................................................................... 11, 13

*Ting v. United States*,
927 F.2d 1504, 1514 (9th Cir. 1991) .............................................15

*United States v. Hensley*,
469 U.S. 221, 229-230 (1985) .........................................................14

*United States v. Sanders*,
994 F. 2d 200, 206 (5th Cir.), cert. denied, 126 L Ed. 2d 355, 114 S. Ct. 408 and
114 S. Ct. 608 (1993) ................................................................. 4, 8, 11

*Venegas v. County of Los Angeles*
(2004) 32 Cal.4th 820, 843 ............................................................17

*White v. Pauly*, —— U.S. ——,
137 S.Ct. 548, 552 (2017) ..............................................................18

*Wilson v. Layne*,
526 U.S. 603, 61 (1999)..................................................................18

*Wattenbarger v. Cincinnati Reds*
(1994) 28 Cal.App.4th 746 ............................................................15

*Weisgram v. Marley Co.*,
528 U.S. 440..........................................................................................8

*Wilkinson v. Torres*,
610 F.3d 546, 551 (9th Cir.2010) ..................................................12

**Statutes**

*F.R.Civ.P. Rule 50(a)(1)*. ........................................................................8

*Fed. R. Civ. P. 50(a)(2)*.........................................................................8

- 4 -

*Federal Practice and Procedure § 2521, p. 240* .......................................................8

*Federal Rule 50(b)* ....................................................................................1, 9

*Cal. Gov. Code § 820.2* ...............................................................................16

*Cal. Pen. Code § 835a* ...............................................................................16

*California Civil Code § 52.1* .......................................................................17

**Other Authorities**

*Ninth Circuit Manual of Model Jury Instructions: Civil § 9.25 (2017)* ...................9

*CACI 3066* ...............................................................................................17

*6 Witkin, Summary of Cal. Law (9th Ed. 1988)* ...........................................15

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

During Trial, Plaintiff Lisa Vargas ("Plaintiff") failed to present sufficient evidence upon which the jury could find liability against Defendants County of Los Angeles, Deputy Nikolis Perez ("Deputy Perez") and Deputy Jonathan Rojas ("Deputy Rojas," "Defendants," collectively) under any of the Plaintiff's claims. Further, Defendant Deputies are entitled to qualified immunity as to the federal claims a matter of law. Accordingly, Defendants are entitled to judgment as a matter of law under Rule 50(a) and/or Rule 50(b).

## II.   FACTS

On August 12, 2018 at approximately 1:52 a.m., Ms. Valentina Zapata ("Ms. Zapata") called 911, and told the 911 operator, in relevant part, that her boyfriend, Mr. David Hill ("Mr. Hill"), was robbed at gunpoint by a male Hispanic in their 30s or 40s wearing a blue shirt. Ms. Zapata did not give any further description of the physical characteristics of the suspect to the 911 operator.

Ms. Zapata told the 911 operator that the armed robbery occurred in East Los Angeles in the "Monterey Park area, by the projects [Nueva Maravilla Housing Community], or by the Denny's on Cesar Chavez and Mednik." Ms. Zapata told the 911 operator, "They pulled out a gun. They pulled out a gun on him." Ms. Zapata told the 911 operator that the individual who had the gun "had a blue shirt." At 1:59 a.m., it was broadcasted that a Code 3 (emergency) response was needed by East LA Sheriff units in the area to a "211" (robbery) at "Hammel St. and Mednik Ave. in East LA" due to "three male Hispanics 35 to 40 took informant's boyfriend's watch at gunpoint. DP is on the corner of location. DP # 1 with a 417 (gun) wearing blue shirt."

Ms. Zapata told the 911 operator that the group of individuals who robbed Mr. Hill are with other individuals "on the grass next to the projects [Nueva Maravilla

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

Complex]." When Sheriff's deputies arrived near the grass area the Maravilla complex where Ms. Zapata and Mr. Hill spotted the male individuals that robbed Mr. Hill, the individuals "scattered in all different directions" "into the projects [Nueva Maravilla Complex]."

Deputy Nikolis Perez ("Deputy Perez") and Deputy Jonathan Rojas ("Deputy Rojas") were inside the East L.A. Sheriff's Station when they heard the dispatch of an armed robbery that had just occurred near the Nueva Maravilla Complex. Defendants drove to the scene in standard tan and green Sheriff uniform and a black and white marked Sheriff's patrol vehicle. Defendants were assigned as the assisting units, and were informed that 3 male Hispanic suspects in their 30s, one with a blue shirt robbed Mr. Hill with a gun.

Deputy Perez and Deputy Rojas were informed that one suspect was armed with a gun and wearing a blue shirt. While enroute, Deputy James Duran advised Deputy Rojas and Deputy Perez to check the Colonia De Los Cedros parking lot for the suspects. Defendants are very familiar with the Maravilla Projects as Maravilla gang territory, and have responded to many calls there involving violent and gang-related crimes.

Upon arrival to the Los Cedros parking lot at approximately 2:00 a.m., Deputy Rojas and Deputy Perez did not observe anyone in the area. Deputy Rojas then proceeded to gain access to the fire road traveling east through the housing complex with their patrol vehicle lights off.

The fire access road curved in a northerly direction, at which time Defendants saw a Hispanic male possibly in his 30s, whom turned out to be Anthony Vargas ("Mr. Vargas"), wearing a dark blue shirt and running across the street in front of them towards the interior of the community. Based on the totality of the information known to Defendants regarding the description of the armed robbery suspect (male, Hispanic, 30s, blue shirt with gun) and finding it suspicious that Mr. Vargas was

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

running away at 2:00 a.m. near the area where the robbery occurred, Defendants had reasonable suspicion to detain Mr. Vargas.

 Mr. Vargas looked at the deputies and continued to run a short distance eastbound across the fire access road away from them further into the grassy area of the apartment complex. Deputy Rojas drove the patrol vehicle a short distance further north up the fire road to catch up to Mr. Vargas. As Deputy Rojas stopped his patrol vehicle, Defendants noticed that Mr. Vargas stumbled onto the ground in a grassy area approximately 20+ ft. away.

Deputy Perez exited the passenger side of the vehicle, and attempted to detain Mr. Vargas as a potential armed robbery suspect. Mr. Vargas, much larger than Deputy Perez, did not comply and began struggling with Deputy Perez. Deputy Rojas also parked and exited the driver's side of the vehicle seconds after Deputy Perez, and attempted to assist to detain Mr. Vargas, whom continued physically struggling with the deputies by resisting their efforts to place his arms and hands behind his back for handcuffing.

At 70 inches tall and 255 lbs, Mr. Vargas was larger and heavier than both Deputy Rojas and Deputy Perez. Deputy Rojas and Deputy Perez had difficulty keeping Mr. Vargas on the ground. Mr. Vargas momentarily broke free of the Defendants control, but then fell again on the grass with Deputy Rojas and Deputy Perez in tow for several feet. While struggling on the ground with Mr. Vargas, Deputy Rojas and Deputy Perez gave Mr. Vargas several refused commands to "show" or "give" his hands.

During the struggle, Deputy Perez was on Mr. Vargas' left side attempting to gain control of Mr. Vargas' left arm, which was underneath Mr. Vargas' body. Deputy Rojas was on Mr. Vargas' right side attempting to gain control of Mr. Vargas' right arm, which was also underneath Mr. Vargas' body. During the

- 3 -

struggle, Mr. Vargas was on his stomach, and had both hands underneath him at or near his waistband area out of sight.

Deputy Perez repeatedly ordered Mr. Vargas to, "Give me your hands. Let me see your hands." Mr. Vargas refused to give the deputies his hands despite repeated orders by the deputies to "stop" and give/show his hands. While on the ground, Deputy Rojas was on Mr. Vargas' right side trying to pull Mr. Vargas' right arm out from underneath him.

During the struggle, Deputy Rojas reached under Mr. Vargas towards his waistband area to see if Mr. Vargas was armed, and felt the butt of a handgun in Mr. Vargas' waistband. Deputy Rojas yelled out to Deputy Perez that Mr. Vargas had a gun stating, "Gun, gun, he has a gun!"

After being informed that Mr. Vargas had a gun by Deputy Rojas, Deputy Perez broadcasted at approx. 2:05 a.m. that Defendants were in a fight with someone armed with a gun stating, "the patch (meaning emergency)" "involved in a fight. Magnolia's south corner. Magnolias. He's 417 (gun)!" After being informed that Mr. Vargas had a gun, Deputy Perez then hit Mr. Vargas two to three times in the back of the head attempting to get Mr. Vargas' left hand out from underneath Mr. Vargas, which were unsuccessful.

After hearing that Mr. Vargas had a gun, Deputy Perez continued to physically attempt to gain control of Mr. Vargas' left hand, which was still underneath Mr. Vargas by his waistband, attempting to warn Mr. Vargas against grabbing the gun by stating, "Give me your hands! I don't want to shoot you!" Mr. Vargas responded, "I can't. I can't," but continued attempting to push himself up with his right hand, blade his body away from Deputy Perez, and struggle against the deputies' orders, which led Deputy Perez to believe that Mr. Vargas was being untruthful and trying to resist or escape. Despite knowing that Mr. Vargas had a gun, Defendants did not

- 4 -

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

yet shoot Mr. Vargas because he was not yet an imminent threat of death or bodily harm to them as he had not yet attempted to grab or use the gun against them.

After Deputy Rojas felt the gun, Deputy Rojas began punching Mr. Vargas' right side in an attempt to overcome Mr. Vargas' resistance and take control of his right arm/hand. Mr. Vargas continued to struggle and try to get up. Deputy Rojas continued attempting to overcome Mr. Vargas resistance and gain control of his right hand.

Mr. Vargas partially got up, but then fell back down to the ground on his stomach with his arms tucked up under him, and with Deputy Rojas landing on Mr. Vargas' right side. Deputy Rojas' handheld radio lanyard was wrapped around Mr. Vargas' right forearm from the struggle, preventing Deputy Rojas from being able to release himself. Deputy Perez was on Mr. Vargas' left side, and struck Mr. Vargas' head "three or four" times in order to overcome Mr. Vargas' resistance with orders to give up his hands.

While on the ground, Deputy Rojas observed Mr. Vargas then lift his body up partially to his knees, turn his torso towards the right side towards Deputy Rojas, and saw the gun in Mr. Vargas' right hand, "as if he was about to shoot." Deputy Rojas describes it as, "He rolled. It was as if he rolled over [towards/facing Deputy Rojas] picking up his, his right upper body and at which point I saw his, the gun in his [right] hand." From Mr. Vargas' rear, left-side, Deputy Perez saw Mr. Vargas lift his body up partially to his knees with his hands reaching towards the front of his waistband.

Seeing the gun in Mr. Vargas' right hand, Deputy Rojas believed Mr. Vargas was going to shoot him and yelled, "Gun! Gun! Gun!" Deputy Perez heard Deputy Rojas yell, "Gun! Gun! He's going for the gun!" Believing Mr. Vargas to be an imminent threat of death or serious bodily harm, Deputy Rojas, from a seated position from Mr. Vargas' right side due to having fallen with Mr. Vargas during the

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

struggle, drew his service weapon and fired approximately eight (8) gunshots in one volley towards Mr. Vargas' right side center mass, which lasted a half a second to a second and a half.

Hearing Deputy Rojas loudly say, "Gun! Gun! Gun! He's going for the gun!" plus the fear in Deputy Rojas' voice, Deputy Perez believed Mr. Vargas became an imminent threat of death or serious bodily harm and fired approximately eight (8) gunshots in one volley towards Mr. Vargas' rear, left-side, which also lasted half a second to a second and a half. Deputy Perez immediately broadcasted that the deputies were involved in a "998, 998," which is code for a deputy-involved shooting. "902-R" (ambulance rescue) was also summoned immediately following the shooting.

After shooting, Deputy Rojas then got up and detained Mr. Vargas at gunpoint. Deputy Perez also detained Mr. Vargas at gunpoint. Within seconds of the "998" broadcast, Deputy Perez saw additional units arriving in the distance and flashed his flashlight 2-4 times in order to gain their attention to the area. Within seconds to minutes of the "998" broadcast, Sgt. Mario Castro and Sgt. Sara Rodriguez ("Sgt. Rodriguez") arrived and observed Deputies Perez and Rojas detaining Mr. Vargas. Defendants informed Sgt. Rodriguez that Mr. Vargas was armed.

Sgt. Rodriguez observed that Mr. Vargas was laying on his stomach, with both of his hands tucked underneath his body towards his waistband area. Sgt. Rodriguez noticed the lanyard cord to Deputy Rojas' external microphone was still wrapped around Mr. Vargas' right arm. For officer safety, other assisting deputies were ordered to handcuff Mr. Vargas.

Mr. Vargas was rolled onto his left side with CPR attempted. When Mr. Vargas was rolled over, a black semi-automatic handgun was observed and recovered from underneath Mr. Vargas' body by his waistband area. Mr. Vargas'

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

hands tested positive for particles of gunshot residue. The recovered black 9mm handgun tested positive for Mr. Vargas' DNA. The fact that additional DNA appeared on Mr. Vargas gun does not mean it was "planted" to any reasonable medical probability.

Plaintiff did not witness the shooting incident. Plaintiff never saw any deputy "plant" a gun on Mr. Vargas. No one has ever told Plaintiff that any deputy "planted" a gun on Mr. Vargas. Plaintiff has no video or photos showing any deputy plant a gun on Mr. Vargas. Mr. Carlos Estrada ("Mr. Estrada"), a civilian, did not witness the shooting incident. Mr. Estrada never saw any deputy plant a gun on Mr. Vargas.

On August 17, 2018, Deputy Medical Examiner Timothy F. Dutra ("Dr. Dutra") conducted an autopsy of Mr. Vargas. Gunshot wound #13 to Mr. Vargas' right forearm is consistent to a reasonable medical probability with his right arm being bent inward at the elbow towards his waistband area at the time he sustained gunshot wound #13 (as described by Deputy Rojas).

Gunshot wounds No. 6, 7, 8, 9, 10, 11, 12 and 13 are consistent to a reasonable medical probability with the shooter being on Mr. Vargas' right side as testified to by Deputy Rojas. Gunshot wounds No. 1, 2, 3, 4 and 5 are consistent to a reasonable medical probability with the shooter being on Mr. Vargas' rear-left side as testified to by Deputy Perez.

When Dr. Dutra noted that certain gunshot wounds were to Mr. Vargas' "back," he was not meaning the "back" as a layperson would understand the "back." When Dr. Dutra noted that certain gunshot wounds were to Mr. Vargas' "back," he simply meant to communicate *to another medical professional* as opposed to a layperson that the gunshot wound, even if it could also correctly be considered Mr. Vargas' right/lateral side, was "*posterior*," i.e. *behind* the "coronal plane," an anatomical line that divides the body from front ("anterior") to back ("posterior"). It would also be consistent to a reasonable medical probability from a layperson's

perspective that Mr. Vargas' gunshot wounds No. 6, 9, 10, and 12 are in his right side.

### III.   <u>LEGAL AUTHORITY</u>

Rule 50, of the Federal Rules of Civil Procedure, provides in relevant part:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on that issue, the court may: A) resolve the issue against the party; and B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

F.R.Civ.P. Rule 50(a)(1). A Rule 50 motion may be made at any time before the case is submitted to the jury. F.R.Civ.P. Rule 50(a)(2).

Federal Rules of Civil Procedure, Rule 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. Fed. R. Civ. P. 50(a)(1). It allows the trial court to remove cases or issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448, 120 S. Ct. 1011, 1017 (2000) quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed.1995)).

A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). In deciding a motion brought pursuant to Rule 50(a), a court reviews all of the evidence and draws all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000). A court is not permitted to make credibility determinations or weigh the evidence. *Id*. The salient inquiry is whether the evidence "permits only one reasonable conclusion [.]" *Pavao v. Pagay*,

307 F.3d 915, 918 (9th Cir. 2002). Moreover, based upon the same standards, Federal Rule 50(b) allows for a renewal of the Rule 50 Motion(s) after Trial.

In this instance, a post-verdict Rule 50(b) motion challenges the sufficiency of the evidence regarding Plaintiffs' excessive force cause of action. *Gilbrook v. City of Westminster*, 177 F.3d 839, 864 (9th Cir. 1999). Defendant renews its request for judgment as a matter of law pursuant to Rule 50(b) on the following grounds:

1) Plaintiff failed to present any legally sufficient evidence of any evidence that any of the Defendant Deputies used excessive force in her case in chief, nor did she provide any evidence and/or testimony regarding the same and on that basis, there was a complete absence of evidence supporting this claim; and

2) Even after the close of all the evidence, the record remained void of any legally sufficient evidence, testimonial and/or via documents, of any use of excessive force by any Defendant.

## IV. ARGUMENT

### A. Defendant Deputies Are Entitled to Judgment as a Matter of Law as to Plaintiff's Claim for Excessive Use of Force Under 42 U.S.C. § 1983

As to their claim for excessive force, Plaintiff must demonstrate that the force used against decedent Mr. Anthony Vargas was objectively unreasonable under all the circumstances. *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Palacios v. City of Oakland*, 970 F. Supp. 732, 740 (N.D. Cal. 1997); see also; Ninth Circuit Manual of Model Jury Instructions: Civil § 9.25 (2017).

In this case, the involved Deputies were privileged to use force to protect themselves and the community against Mr. Vargas' aggressive and threatening attempt to grab the gun in his waistband. Moreover, unlike private citizens, police officers act under color of law to protect the public interest. They are charged with

acting affirmatively and using force as part of their duties, because "the right to make an arrest or investigatory stop necessarily carried with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Conner*, 490 U.S. 386, 396, 104 L Ed. 2d 443, 109 S. Ct. 1865 (1989). They are, in short, not similarly situated to the ordinary battery defendant and need not be treated the same. In these cases, then, "the defendant police officer is in the exercise of the privilege of protecting the public peace and order [and] he is entitled to the even greater use of force than might be in the same circumstances required for self-defense. [P] . . .[P] . . .[T]he burden of proof [is] upon the plaintiff to establish the use of excessive force." *Edson v. City of Anaheim* (1998) 63 Cal. App. 4th 1269, 1273.

Fourth Amendment excessive force claims are evaluated under a standard of "objective reasonableness." *Graham*, supra, 490 U.S. at 395. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake. [Citations omitted.] Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. [Citation omitted.]" *Ibid*. The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. *Id*. at 109 S. Ct. 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Ibid. The inquiry is one of "objective reasonableness" under the circumstances, and the officer's motivations or evil intentions have no place in that in that inquiry. *Id*. at 109 S. Ct. 1873; *see also Monzon v. City of Murrieta*, No. 19-55164, 2020 WL 6293163,

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

at *5 (9th Cir. Oct. 27, 2020) ("[w]e are also required to view the facts as an officer would have encountered them on the night in question, not as an *ex post facto* critic dissecting every potential variance under a magnifying glass… Judges and lawyers viewing an event like this in hindsight from the comfort of their armchairs are often tempted to dissect, evaluate, and second-guess the officers' actions piecemeal. That would be a serious mistake. Cherry-picking specific facts in hindsight is not at all reflective of how this event transpired in real life."). "Section 1983 is intended to remedy egregious conduct, and not every assault or battery . . . will create liability under it." *Haberthur v. City of Raymore*, 119 F. 3d 720, 723 98th Cir, 1997).

Where the public employee's conduct does not give rise to a cause of action, the public entity's liability is limited accordingly. Gov. Code, § 815.2, subd. (a). "Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." Police officers also "need not avail themselves of the least intrusive means of responding to an exigent situation." *Scott v. Heinrich*, 39 F. 3d 912, 915 (9th Cir. 1994). "The relevant inquiry is always one of reasonableness under the circumstances." *United States v. Sanders*, 994 F. 2d 200, 206 (5th Cir.), cert. denied, 126 L Ed. 2d 355, 114 S. Ct. 408 and 114 S. Ct. 608 (1993).

Plaintiff cannot establish that the Deputies' conduct violated Mr. Vargas' Fourth Amendments rights. As to any force, a determination of the extent to which a particular use of force is "reasonable" cannot be achieved through a mechanical application of a particular test. Instead, the appropriate analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 *citing Tennessee v. Garner*, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L. Ed. 2d 1 (1985). Police officers are not required

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *Forrester v. City of San Diego*, 25 F.3d 804, 806-807 (9th Cir. 1994). Although an officer may not use deadly force to apprehend a suspect when the suspect poses no immediate threat of great bodily injury and/or death to the officer or others, "it is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.' " *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir.2010) *quoting Garner*, 471 U.S. at 11. In this underlying case, in is uncontroverted that Mr. Vargas engaged in actions which created a threat to the Deputies and others. Plaintiff presented no evidence to the contrary at the trial of this case. Generally speaking, the Ninth Circuit has held that "where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force." *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) [en banc].

More specifically, the Ninth Circuit has held that officers have probable cause to believe a suspect poses a serious danger to themselves and others and that deadly force is justified when that suspect "failed to heed warnings or commands and was armed with an edged weapon that he refused to put down". *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1116 (9th Cir. 2005); *see also Reynolds v. County of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996), overruled on other grounds in *Acri v. Varian Assocs. Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) [en banc] [Faced with a knife-wielding suspect, the officers were justified in their use of deadly force]; *David v. City of Fremont*, 2006 U.S. Dist. LEXIS 57211, 51-52 (N.D. Cal. July 31, 2006) [Deadly force justified when suspect failed to comply with repeated commands to drop the knife and instead "advanced toward the officers while making stabbing motions and yelling aggressively] and *Cosentino v. Kurtz*, 2013 U.S. Dist. LEXIS

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

69218 (C.D. Cal. Apr. 16, 2013) [Deadly force justified when suspect walked directly at officers while in possession of an edged weapon].

"Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546-1547 (2017), quoting *Saucier v. Katz*, 533 U. S. 194, 207, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)

Here, the Deputies were investigating a 911 call of an armed robbery at gunpoint (P.C. 211) a felony/serious crime. Further, Mr. Vargas actively resisted arrest and/or detention all the way up until the second deadly force was used. Moreover, Mr. Vargas was armed with a gun during the incident, which elevates the level of threat. Mere argument or speculation that it was "planted" based on Plaintiff's knowledge of the character of her son is inadmissible, and must be disregarded. The Court is reminded that even though Mr. Vargas repeatedly refused the Deputies' orders to provide his hands/arms for handcuffing, no force beyond trying to grab Mr. Vargas' arms was used until after Deputy Rojas felt a gun in Mr. Vargas' waistband and warned Deputy Perez, and even so, the Deputies did *not* immediately shoot Mr. Vargas as he was a *potential*, but not yet *imminent* threat of death or serious bodily harm to the deputies. Deputy Perez even warned Mr. Vargas of the potential for use of deadly force.

Further, there is no *per se* requirement for a warning of "we'll shoot" prior to the use of lethal force, as a matter of law. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (Warning required only "where feasible"); *Garcia v. United States*, 826 F.2d 806, 812 (9th Cir. 1987). Deputies continued attempts to avoid using deadly force by punching Mr. Vargas in an effort to overcome his resistance. The use of punches must be balanced against the government's interest in that form of force. *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007). Here, the punches

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

were reasonable due to the government's interest in obtaining Mr. Vargas' compliance with efforts to handcuff him after the Deputies discovered he had a gun.

It is supported to a reasonable medical probability that Mr. Vargas became an *imminent* threat of death or serious bodily harm when he did the furtive gesture of partially raising his body, turning his torso towards Deputy Rojas, grabbing and/or attempting to grab the gun in his waist with his right hand. In *George v. Morris*, 736 F.3d 829 (9th Cir. 2013) the court stated "This is not to say that the Fourth Amendment always requires officers to delay their fire until a suspect turns his weapon on them. Rather, "[i]f the person is armed--or reasonably suspected of being armed--a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Id*. at 838. Additionally, "an officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer. The high numbers of officer mortalities in recent years illustrate the unreasonableness of such a notion." *Martinez v. Cty. of Los Angeles*, 47 Cal.App.4th 334, 345 (1996).

The fact that Deputy Perez did not personally see the gun, but relied on Deputy Rojas' statement of "Gun! Gun! Gun! He's going for the gun!" and fear in Deputy Rojas' voice is irrelevant as it is well-established that officers may reasonably rely on information received by other officers during the course of an arrest or investigation. *United States v. Hensley*, 469 U.S. 221, 229-230 (1985). Here, the evidence establishes that both Deputy Rojas and Deputy Perez had to make a split-second decision once Mr. Vargas quickly reached for and grabbed the gun in his waistband.

Accordingly, the Deputies had insufficient time to deliberate, and there is insufficient evidence that the Deputies operated with a purpose to harm unrelated to

- 14 -

a legitimate law-enforcement interest, which requires judgement as a matter of law against the substantive due process claim.

**B.    Defendants Are Entitled to Judgment as a Matter of Law as to Plaintiff's Claims for Assault, Battery, Negligence, and the Bane Act Under State Law**

**1.    *Battery Claim***

In California, a claim of battery against a peace officer requires proof of unreasonable conduct on the part of the officer. *See, e.g., Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1102 (2004); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998); *Grundt v. City of Los Angeles*, 2 Cal.3d 575, 587 (1970). It should be noted that a battery claim "is also measured by the same reasonableness standard of the Fourth Amendment." *Atkinson v. County of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (noting that battery is "measured by the same reasonableness standard of the Fourth Amendment."), see also, *Stanley v. County of San Diego* (S.D.Cal. Jan. 23, 2018, No. 16cv1227-MMA (AGS)) 2018 U.S.Dist.LEXIS 10936, at *26.). In California, an "arresting officer may use such force as is reasonably necessary to effect a lawful arrest." *Ting v. United States*, 927 F.2d 1504, 1514 (9th Cir. 1991). However, a police officer commits battery when he uses excessive force. *Saman v. Robbins*, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999). As a result, the same analysis described above is applicable to this claim of battery and should therefore be applied and granted here as well.

**2.    *Negligence Claim***

"The essential elements of a cause of action for negligence are: '(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as a *proximate or legal cause* of the resulting injury.' " *Wattenbarger v. Cincinnati Reds* (1994) 28 Cal.App.4th 746, 751(citing 6 Witkin, Summary of Cal. Law (9th Ed. 1988), italics in original). However, California Courts judge claims of negligent use

of force by the same standards as they would use to evaluate whether there was a Fourth Amendment violation. "Negligence claims stemming from allegations of excessive force by a police officer are . . . analyzed under the Fourth Amendment's reasonableness standard." *Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011) (citing *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (noting that negligence is "measured by the same reasonableness standard of the Fourth Amendment.")); see also, *Hernandez v. City of Pomona* (S. Ct. Cal. 2009) 46 Cal.4th 501, *20-24; *David v. City of Fremont*, 2006 U.S. Dist. LEXIS at *63 (citing *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1102-6). On that basis, the same consideration of the totality of the circumstances required by *Graham* and *Garner* is required in determining reasonableness under California negligence law. *Hernandez v. City of Pomona, supra at* 46 Cal.4th 514. As with a Fourth Amendment claim, it is Plaintiff's burden to prove that an officer's use of force was unreasonable under the totality of the circumstances. *Edson v. City of Anaheim* (4th Dist. Cal. 1999) 63 Cal.App.4th 1269, 1272.

There are two sources of immunity from liability for wrongful death in this case. The first is *Cal. Pen. Code § 835a*, which provides that a police officer is privileged to use reasonable force to effect an arrest, prevent escape or overcome resistance. Therefore, no liability may be had where an officer uses reasonable force to effect an arrest. Additionally, immunity from civil liability arises from *Cal. Gov. Code § 820.2*, which also employs the Fourth Amendment reasonableness standard in conferring immunity for discretionary acts of officers. *Ibid*. Because the undisputed evidence has shown the officers acted reasonably and appropriately under the circumstances, and used no more force than was necessary in effecting the arrest, the officers are entitled to immunity under California law (which necessarily immunized the County under § 815.2) and Plaintiff's negligence claim must be dismissed.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

### C.     Bane Act

Cal. Civil Code § 52.1, known as the Bane Act, authorizes an action against a person who "interferes or attempts to interfere, 'by threat, intimidation, or coercion,' with the exercise or enjoyment by any individual or individuals of rights secured by state or federal law." Plaintiffs must provide proof of "a specific intent to violate [an individual's] right to freedom from unreasonable seizure." *Cornell v. City & Cty. of S.F.* 17 Cal. App. 5th 766, 801–02 (2017); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); *See also* CACI 3066.

The California Supreme Court has explained that Section 52.1 "does not extend to all ordinary tort actions because its provisions are limited to <u>threats</u>, <u>intimidation</u>, or <u>coercion</u> that interfere with a constitutional or statutory right." *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 843. Similarly, "the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Chaudry v. Cty. of Los Angeles*, 751 F.3d 1096, 1105-1106 (9th Cir. 2014).

There is no evidence that Defendants operated a specific intent to violate Mr. Vargas' right to freedom from an unreasonable seizure by use of threats, intimidation, or coercion. Moreover, the Deputies use of deadly force was in self-defense. Thus, Plaintiff's claim under the Bane Act fails.

### D.     Defendants Are Entitled To Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) In *Saucier v. Katz* 533 U.S. 194 (2001), the Supreme Court established a two-step sequence for determining whether qualified immunity attaches: 1) If facts alleged could show that "the officer's conduct violated a constitutional right;" and 2) Whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id.* at 201.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to every reasonable officer that his conduct was unlawful *in the situation he confronted*." *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018); *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (*Emphasis added*); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is an "objective but fact-specific inquiry." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). "I[f] officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008) "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)

The Supreme Court reiterated that "'clearly established law' should not be defined "at a high level of generality," but must be "'particularized' to the facts of the case." *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 552 (2017); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that the relevant inquiry "must be undertaken *in light of the specific context of the case*, not as a broad general proposition")

In other words, Plaintiff must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct under these circumstances* was unlawful. *White*, —— U.S. ——, 137 S.Ct. 548, 552 (2017) (*per curiam*). To achieve that kind of notice, the prior precedent must be "controlling" – from the Ninth Circuit or Supreme Court – or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Wilson v. Layne*, 526 U.S. 603, 61 (1999). Here, Defendants are entitled to qualified immunity because Decedent's rights were not so clearly established here to where every reasonable officer would know they were violating his rights.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

## V.    <u>CONCLUSION</u>

Based on the foregoing, the Court should grant Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) and dismiss Plaintiff's Fourth Amendment claims and claims under state law.

Dated:  April 18, 2023                       **IVIE McNEILL WYATT PURCELL & DIGGS**

                                    **By:**   <u>*/s/ Marina Samson*</u>
                                         **RICKEY IVIE**
                                       **MARINA SAMSON**
                                       Attorneys for Defendants,
                                       **County of Los Angeles, et al.**

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, **COUNTY OF LOS ANGELES, et al.**, certifies that this brief contains 7215 words, which complies with the word limit of *L.R.* 11-6.1.

Dated:  April 18, 2023

IVIE McNEILL WYATT
**PURCELL & DIGGS**

By:    <u>*/s/ Marina Samson*</u>
              **RICKEY IVIE**
              **MARINA SAMSON**
              Attorneys for Defendants,
              **County of Los Angeles, et al.**

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES