1  Humberto M. Guizar, Esq., (SBN 125769)
      *hguizar@ghclegal.com*
2  Christian Contreras, Esq., (SBN 330269)
      *ccontreras@ghclegal.com*
3  **GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
   3500 W. Beverly Blvd.,
4  Montebello, California 90640
   Telephone: (323) 725-1151
5  Facsimile: (323) 597-0101

6  Attorneys for Plaintiff,
7  LISA VARGAS

8                  **UNITED STATES DISTRICT COURT**
9
10            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11

12  LISA VARGAS,                          ) **Case No.: 2:19-cv-03279-MEMF-AS**
                                          ) *[Hon. Maame Ewusi-Mensah*
13              Plaintiffs,               ) *Frimpong, United States District*
                                          ) *Judge]*
14         v.                             )
                                          ) **PLAINTIFFS' OPPOSITION TO**
15  COUNTY OF LOS ANGELES,                ) **DEFENDANTS' MOTION FOR**
16  NIKOLIS PEREZ, JONATHAN               ) **JUDGMENT AS A MATTER OF**
    ROJAS, and DOES 1 through 10,         ) **LAW; MEMORANDUM OF**
17  inclusive,                            ) **POINTS AND AUTHORITIES**
                                          )
18              Defendants.               )
19  _____  )

20
21
22
23
24
25
26
27
28

**TO THE HONORABLE COURT, DEFENDANTS, AND ALL OTHER INTERESTED PARTIES:**

**COME NOW** Plaintiff LISA VARGAS and hereby Opposed Defendants' Motion for Judgment as a Matter of Law.

The Opposition is based upon the attached Memorandum of Points and Authorities, the testimony and evidence received at trial, any evidence that may be presented at the hearing, and all other pleadings and papers filed herein.

DATED: April 19, 2023          **GUIZAR, HENDERSON & CARRAZCO, LLP**

By: _____
HUMBERTO GUIZAR
CHRISTIAN CONTRERAS
Attorneys for Plaintiff

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II.  PLAINTIFFS' STATEMENT OF FACTS ........................................................2

    A. Anthony Vargas was at a Candle Light Vigil and Had no Connection to the Subject Robbery at all ............................................................................2

    B. Defendants ROJAS and PEREZ responded to the Robbery Call but Failed to Catch the Robbers ............................................................................2

    C. Defendants ROJAS and PEREZ Spotted ANTHONY VARGAS despite ANTHONY VARGAS not Fitting the Description ..........................................3

    D. The Testimony of Defendant ROJAS and PEREZ Diverges in terms of how ANTHONY VARGAS was Contacted ..............................................4

    E. Defendants ROJAS and PEREZ shot ANTHONY VARGAS while ANTHONY VARGAS was on the Floor Attempting to Get Up ....................4

    F. The Physical Forensic Evidence Contradicts the False Testimony of ROJAS and PEREZ ............................................................................5

    G. Gunshot Number 13 Disproves ROJAS' Version of the Shooting .............6

III.  LEGAL STANDARD ........................................................................................7

IV.  ARGUMENT ....................................................................................................8

    A. Defendant Rojas And Perez Are Not Entitled To Judgment As A Matter Of Law On The Excessive Force Claim Because The Evidence Permits A Conclusion That Excessive Force Occurred ......................................................8

        i. The Nature of the Intrusion was the Highest Governmental Intrusion under the Fourth Amendment. ..................................................................8

        ii. The Governmental Interest did not Call for Deadly Force. .....................9

            a) ANTHONY VARGAS was not Involved in the Robbery .................9

iii

b) ANTHONY VARGAS was Unarmed when he was Shot and was Simply Trying to Run Away ................................................................... 9

c) ANTHONY VARGAS Albeit Resisting, was not Fighting ............. 10

d) All Other Factors Weigh in Favor of Defendants Violating ANTHONY VARGAS' Fourth Amendment Right. ........................... 11

B. Defendant Rojas And Perez Are Not Entitled To Judgment As A Matter Of Law On The State Law Claims ............................................................... 12

i. Defendants Committed a Battery ........................................ 12

ii. Defendants were Negligent ................................................. 12

iii. Defendants Violated the Bane Act ...................................... 13

C. Defendant Rojas And Perez Are Not Entitled To Qualified Immunity ..... 13

**V.   CONCLUSION ................................................................................ 18**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF AUTHORITIES

**Cases**        **Page(s)**

*A.D. v. Cal. Highway Patrol,*
  712 F.3d 446 (9th Ch. 2013) ................................................................ 14

*A.K.H. ex rel. Landeros v. City of Tustin,*
  837 F.3d 1005 (9th Cir. 2016) ............................................................... 8

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................. 14

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................... 7

*Blankenhorn v. City of Orange,*
  485 F.3d 463 (9th Cir. 2007) ................................................................. 9

*Chew v. Gates,*
  27 F.3d 1432 (9th Cir.1994) ................................................................... 9

*Costa v. Desert Palace, Inc.,*
  299 F.3d 838 (9th Cir. 2002) ................................................................. 7

*Cruz v. City of Anaheim,*
  765 F.3d 1076 (9th Cir. 2014) ............................................................. 16

*Drummond ex rel. Drummond v. City of Anaheim,*
  343 F.3d 1052 (2003) ............................................................................ 8

*Duk v. MGM Grand Hotel, Inc.,*
  320 F.3d 1052 (9th Cir. 2003) ............................................................... 7

*Ellis v. Wynalda,*
  999 F.2d 243 (7th Cir. 1993) ............................................................... 17

*Espinosa v. City and County of San Francisco,*
  598 F.3d 528 ....................................................................................... 16

*Estate of Diaz v. City of Anaheim,*
  840 F.3d 592 (9th Cir. 2016) ................................................................. 9

*Fancher v. Barrientos,*
  723 F.3d 1191 (10th Cir. 2013) ........................................................... 17

*Floyd v. City of Detroit,*
  518 F.3d 398 (6th Cir. 2008) ............................................................... 17

*Forrett v. Richardson,*
  112 F.3d 416 (9th Cir. 1997) ................................................................. 7

*George v. Morris,*
  736 F.3d 829 (9th Cir. 2013) ............................................................... 15

*Glenn v. Washington Cnty.,*
  673 F.3d 864 (9th Cir. 2011) ......................................................... 11, 15

*Graham v. Connor,*
  490 U.S. 386 (1989) ..................................................................... 8, 9, 10

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hayes v. Cnty. of San Diego*,
   57 Cal.4th 622 (2013) ...................................................................12

*Hayes v. Cty. of San Diego*,
   736 F.3d 1223 (9th Cir. 2013)......................................................16

*Hughes v. Kisela*,
   862 F.3d 775 (9th Cir. 2016).........................................................11

*J.L.D. v. City of Los Angeles*,
   555 F.App'x 670 (9th Cir. 2014) ...................................................17

*Jefferson v. Lewis*,
   594 F.3d 454 (6th Cir. 2010) .........................................................17

*Longoria v. Pinal County*,
   873 F.3d 699 (9th Cir. 2017)..........................................................15

*Morales v. Fry*,
   873 F.3d 817 (9th Cir. 2017)..........................................................14

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ...........................................................................13

*N.E.M. v. City of Salinas*,
   761 F. App'x. 698 (9th Cir. 2019) .................................................16

*Ostad v. Or. Health Scis. Univ.*,
   327 F.3d 876 (9th Cir. 2003)............................................................7

*Poulos v. City of Los Angeles*,
   2022 WL 17072884 (C.D. Cal. Sept. 30, 2022).............................7

*Reed v. Lieurance*,
   863 F.3d 1196 (9th Cir. 2017)..........................................................7

*Reese v. Cty. of Sacramento*,
   888 F.3d 1030 (9th Cir. 2018)........................................................13

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133 (2000) .........................................................................7

*Deorle v. Rutherford*,
   272 F.3d 1272, 1281 (9th Cir. 2001).........................................9, 10, 11, 15

*S.B. v. Cty. of San Diego*,
   864 F.3d 1010 (9th Cir. 2017)........................................................16

*S.R. Nehad v. Browder*,
   929 F.3d 1125 (9th Cir. 2019)..................................................14, 15

*Santos v. Gates*,
   287 F.3d 846 (9th Cir. 2002).............................................................8

*Saucier v. Katz*,
   533 U.S. 194 (2001)..........................................................................14

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir.2005)..............................................................9

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

*Tabares v. City of Huntington Beach*,
  988 F.3d 1119 (9th Cir. 2021) ................................................................... 12
*Tennessee v. Garner*,
  471 U.S. 1 (1985) ........................................................................................ 8, 9
*Ting v. United States*,
  927 F.2d 1504 (9th Cir. 1991) ................................................................... 16
*Villegas ex rel. C.V. v. City of Anaheim*,
  823 F.3d 1252 (9th Cir. 2016) ................................................................... 12
*Vos v. City of Newport Beach*,
  892 F.3d (9th Cir. 2018) ............................................................................. 9
*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002) ..................................................................... 7
*Wilkins v. City of Oakland*,
  350 F.3d 949 (9th Cir. 2003) ..................................................................... 14
*Wilson v. Layne*,
  526 U.S. 603 (1999) ................................................................................... 14
*Zion v. County of Orange*,
  874 F.3d 1072 (9th Cir. 2017) .............................................................. 11, 16

**Statutes**

42 U.S.C. § 1983 ............................................................................................ 1
Cal. Civ. Code § 52.1 ..................................................................................... 1
Cal. Civ. Code § 52.1(a) ................................................................................ 13
U.S. Const. amend. IV ................................................................................... 8

**Rules**

Fed. R. Civ. P. 50(a)(1) ................................................................................ 7

**Other Authorities**

CACI 1305B ................................................................................................... 12

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A
MATTER OF LAW**

**MEMORANDUM OF POINTS AND AUTHORIES**

## I.   INTRODUCTION

This is a civil rights action concerning the shooting death of ANTHONY VARGAS by Defendants NIKOLIS PEREZ and JONATHAN ROJAS on August 12, 2018 in East Los Angeles, California. Plaintiff LISA VARGAS, mother of ANTHONY VARGAS, initiated this action against Defendants in the Los Angeles County Superior Court, and Defendants timely removed the case to this Court on April 24, 2019. *See generally* (Dkt. 1). Plaintiff filed the operative First Amended Complaint ("FAC") on August 19, 2019. See generally FAC. The FAC alleged various causes of action. After a motion for summary judgment, the following causes of action remained:

First Cause of Action:  Battery causing wrongful death against  Perez and Rojas.

Second Cause of Action: Negligence causing wrongful death against all Defendants.

Third Cause of Action: Violation of the Bane Act, Cal. Civ. Code § 52.1, against Perez and Rojas.

Fourth Cause of Action: Violation of 42 U.S.C. § 1983 (use of unreasonable and/or excessive force) against  Perez and Rojas. FAC ¶¶ 46–52.

Fifth Cause of Action: Violation of 42 U.S.C. § 1983 (due process) against Deputies Perez and Rojas. FAC ¶¶ 53–60.

On April 6, 2023, a jury trial commenced in this action. On April 17, 2023, the case was submitted to the jury.

As stated below, this Court should deny Defendants' Motion for Judgement as a Matter of Law (hereinafter "JMOL") because the jury must resolve credibility, inferences, and factfinding inquiries which are heavily disputed. Clearly, such determinations are the province of the jury, not this court. The credibility of the defendants is central to this case and because this Court is unable to make credibility determinations in a JMOL, such determination should be made by the jury. Accordingly, Defendants' JMOL should be denied.

1

## II.   PLAINTIFFS' STATEMENT OF FACTS

**A. Anthony Vargas was at a Candle Light Vigil and Had no Connection to the Subject Robbery at all**

On August 11, 2018, ANTHONY VARGAS was at a candle light vigil near the Nueva Maravilla Housing Community for another young man who was recently killed. The Nueva Maravilla Housing Community is located in East Los Angeles near the East Los Angeles College. As the night progressed into August 12, 2018, ANTHONY VARGAS was still near the Nueva Maravilla Housing Community. As any 21 year old would do, ANTHONY VARGAS was out late.

At approximately, 1:45 am, David Hill was finishing dinner with his then girlfriend, Valentina Zapata at a Denny's. After dinner, David Hill walked to his vehicle which was at the northern section of the Nueva Maravilla Housing Community. The Denny's was at the south eastern portion of the Nueva Maravilla Housing Community.

As Mr. Hill was walking to his vehicle, he was approached by a man on a bike who eventually took Mr. Hill's watch. Mr. Hill described the man who robbed him as a man on a bike, in his 30s or 40s, bald head, go-tee, visible neck tattoos, weighing about 150 pounds, 5'8 in height, and wearing a blue shirt. Mr. Hill advised Ms. Zapata about what occurred and 911 was called.

**B. Defendants ROJAS and PEREZ responded to the Robbery Call but Failed to Catch the Robbers**

Defendants ROJAS and PEREZ were at the East Los Angeles Sheriff's Station near the Nueva Maravilla Housing Community when they received the call about the robbery. Defendants ROJAS and PEREZ responded Code 3 to the Nueva Maravilla Housing Community. By the time they arrived, Deputies Rendon and Duran made contact with Mr. Hill and Ms. Zapata.

While responding to the call, Defendants ROJAS and PEREZ failed to obtain further details about the individuals who robbed Mr. Hill. Indeed, Defendants ROJAS

2

1    and PEREZ failed to speak to Mr. Hill and Ms. Zapata, let alone ask Deputies Rendon

2    and Duran what additional details they had regarding the individuals involved in the

3    robbery.

4        **C. Defendants ROJAS and PEREZ Spotted ANTHONY VARGAS despite**

5            **ANTHONY VARGAS not Fitting the Description**

6        Defendants ROJAS and PEREZ arrived to the Los Cedros section of to the

7    Nueva Maravilla Housing Communit and did not see any individuals. However, had

8    Defendants ROJAS and PEREZ arrived just one minute earlier, they would have

9    spotted three individuals who may have fit the description of the robbery call. Despite

10   not seeing any individuals who fit the description, Defendants ROJAS and PEREZ saw

11   ANTHONY VARGAS running across a fire access road.

12       ANTHONY VARGAS was only 21 years old at the time, weighed

13   approximately 250 pounds, appear six feet to the defendants, did not have neck tattoos,

14   was not bald, was not on a bike, and had a beard. Despite ANTHONY VARGAS not

15   fitting the description, Defendants ROJAS and PEREZ decided to ambush ANTHONY

16   VARGAS.

17       Defendants ROJAS and PEREZ had the options of waiting for back up,

18   containing the scene, and following their training regarding surveillance. However,

19   despite having safer options in how to approach the situation, Defendants ROJAS and

20   PEREZ decided to ambush ANTHONY VARGAS.

21       As soon as Defendants ROJAS and PEREZ exited their patrol vehicles, they

22   violated their own foot pursuit policy in terms of following the best course of action.

23   Defendants ROJAS and PEREZ understood that foot pursuits are inherently dangerous

24   and apprehending subjects on foot require keen perception and commons sense.

25   However, despite such policy, Defendants ROJAS and PEREZ jumped out of their

26   vehicles and engaged in a foot pursuit attempting to apprehend ANTHONY VARGAS

27   in a grassy area.

28   ///

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A
MATTER OF LAW**

### D. The Testimony of Defendant ROJAS and PEREZ Diverges in terms of how ANTHONY VARGAS was Contacted

Despite there being a video showing how Defendants ROJAS and PEREZ contacted ANTHONY VARGAS (Trial Exhibits 171 & 172), Defendants ROJAS and PEREZ testified versions inconsistent with each other and inconsistent with the objective video. Defendant PEREZ testified that there was an elaborate struggle in a grassy area as depicted in Trial Exhibit 153-1(A). Defendant ROJAS after hearing all the evidence attempted to provide reconciliatory testimony as to the struggle but ultimately contradicted Defendant PEREZ and the video (Trial Exhibits 171 & 172).

Worse yet, Defendant ROJAS admitted that he originally told homicide investigators that ANTHONY VARGAS dragged the deputies 50 feet. In fact, Defendant PEREZ also testified to some extent that ANTHONY VARGAS moved the deputies as shown in Trial Exhibit 157-5(A).

Nevertheless, throughout the entire struggle, the only violence which occurred was on behalf of Defendants ROJAS and PEREZ who testified that they punched ANTHONY VARGAS multiple times including punching ANTHONY VARGAS in the back of the head. Both Defendants ROJAS and PEREZ testified that never punched, kicked, struck, spit at, or did anything aggressive towards Defendants ROJAS and PEREZ. In fact, the only thing ANTHONY VARGAS did was say "I can't, I can't."

At the same time that ANTHONY VARGAS was being beaten by Defendants ROJAS and PEREZ, Defendant ROJAS' radio cord was tethered to ANTHONY VARGAS right forearm. The radio cord was wrapped around ANTHONY VARGAS' right forearm.

### E. Defendants ROJAS and PEREZ shot ANTHONY VARGAS while ANTHONY VARGAS was on the Floor Attempting to Get Up

Roughly a minute after Defendants ROJAS and PEREZ contacted and beat up ANTHONY VARGAS, ANTHONY VARGAS was able to break free from the grip of Defendants ROJAS and PEREZ. However, ANTHONY VARGAS immediately fell to

4

1   the floor and was lying down face down. As ANTHONY VARGAS was pushing
2   himself up with his arms extended out, Defendants ROJAS and PEREZ both fired
3   sixteen (16) shots at ANTHONY VARGAS.

4   Defendant ROJAS testified that when he fired his first shot, ANTHONY
5   VARGAS was on his left side turning the right side of his body up towards the sky.
6   However, there are no shots to the front of ANTHONY VARGAS's body. Defendant
7   ROJAS fired a total of eight (8) shots at ANTHONY VARGAS.

8   Defendant PEREZ testified that ANTHONY VARGAS was on his knees and
9   becoming erect when he fired his eight (8) shots at ANTHONY VARGAS. Defendant
10  PEREZ never saw the front of ANTHONY VARGAS' body and never saw a gun. All
11  that Defendant PEREZ heard was Defendant ROJAS say "he's going for the gun" and
12  that is the reason Defendant PEREZ shot. However, Defendant ROJAS testified that
13  he said "gun, gun, gun" not "he's going for the gun."

14  Defendants ROJAS and PEREZ allege that ANTHONY VARGAS had a firearm
15  in his right hand but this is the same arm that was tightly wrapped by Defendant
16  ROJAS' radio cord.

17  **F. The Physical Forensic Evidence Contradicts the False Testimony of**
18  **ROJAS and PEREZ**

19  After the shooting, Sergeant Sara Rodriguez arrived to the scene. Sergeant
20  Rodriguez testified that she saw a gun "flying out" of ANTHONY VARGAS'
21  waistband and that the gun was also "popping out." Sergeant Rodriguez also testified
22  that she observed Defendant ROJAS' radio cord tightly wrapped around ANTHONY
23  VARGAS' right forearm and the radio cord was full of blood.

24  In terms of the firearm found at the scene, the firearm looked like a brand new
25  gun and it did not have any blood on it despite the crime scene being a bloody scene.
26  The firearm did not have any fingerprints on it including ANTHONY VARGAS finger
27  prints. Indeed, the firearm did not even have any smudges or partial prints. The firearm
28  found at the scene also belonged to a person in Arizona and was not reported stolen.

1   Most importantly, the firearm did not have ANTHONY VARGAS' DNA on it

2   including zero DNA on the grip of the firearm whether ANTHONY VARGAS was

3   allegedly holding the gun.

4   **G. Gunshot Number 13 Disproves ROJAS' Version of the Shooting**

5   During trial, much testimony was received with respect to Gunshot Number 13

6   which is the gunshot to ANTHONY VARGAS' right forearm. It is undisputed that the

7   entry of Gunshot Number 13 was in the right proximal posteromedial forearm or in

8   other words, the inside of the right forearm. Dr. Jesse Wobrock opined that ANTHONY

9   VARGAS was likely shot when he had his arms extended out. Dr. Timothy Dutra

10  testified that the shot could have occurred if the right forearm was pronated. Pronation

11  of a forearm occurs when the palm or forearm faces down. Clearly, pronation of the

12  forearm could not have occurred if ANTHONY VARGAS was holding a firearm and

13  had his arm bent. Pronation occurred because ANTHONY VARGAS has his palm

14  down attempting to push himself off the floor when he was shot.

15  Further, Defendants' own expert, Rocky Edwards, testified that ANTHONY

16  VARGAS being on his left with his right side facing towards the sky (as described by

17  ROJAS) would be inconsistent with the physical evidence. Rocky Edwards also

18  testified that it was possible that Gunshot Number 13 occurred when ANTHONY

19  VARGAS' has his arms extended out. Finally, Rocky Edwards demonstration during

20  trial further proves that ANTHONY VARGAS was shot from behind and such

21  demonstration contradicted Rocky Edwards's own graphic. See below:

 

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

### III.   LEGAL STANDARD

Juries perform a vital role in our system of justice. *Poulos v. City of Los Angeles*, No. CV 19-496-MWF (AFMX), 2022 WL 17072884, at *5 (C.D. Cal. Sept. 30, 2022). As triers of fact, jurors become a part of the court itself, and judges are "rarely entitled to disregard jury verdicts that are supported by substantial evidence." *Id.* (citing *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003).

The standard that the moving party must meet on a Rule 50 motion is "very high" and "recognizes that credibility, inferences, and factfinding are the province of the jury, not this court." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). A court may enter judgment as a matter of law only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [prevailing] party" as to "an issue" on which that party "has been fully heard" during trial. Fed. R. Civ. P. 50(a)(1).

"The standard for judgment as a matter of law ... 'mirrors' the summary judgment standard." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000). "Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). In deciding the motion, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000). Those functions "are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court grants judgment as a matter of law, therefore, only when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002) (quoting *Forrett v. Richardson*, 112 F.3d 416, 419 (9th Cir. 1997)).

///

///

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

# IV.   ARGUMENT

## A. Defendant Rojas And Perez Are Not Entitled To Judgment As A Matter Of Law On The Excessive Force Claim Because The Evidence Permits A Conclusion That Excessive Force Occurred

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment requires law enforcement officers using force only in an amount that is objectively reasonable in light of the circumstances facing them. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Graham*, 490 U.S. 386). If deadly force is used the officer must have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, [1] including the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (the *Graham* analysis).

## i.   The Nature of the Intrusion was the Highest Governmental Intrusion under the Fourth Amendment.

Under the *Graham* analysis, the first step is to "assess the quantum of force used to arrest [plaintiff] by considering 'the type and amount of force inflicted.'" *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (2003). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a 'fundamental interest in his own life' and because such force 'frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.'" *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir.

2016). Here, Defendant used deadly force on ANTHONY VARGAS.

**ii.    The Governmental Interest did not Call for Deadly Force.**

1.     The next step of the inquiry requires identification of the government's countervailing interests at stake. *Graham*, 490 U.S. at 396. "Relevant factors to this inquiry include, but are not limited to '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (quoting *Graham*, 490 U.S. at 396); *see also Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 605 (9th Cir. 2016). The most important of these three (3) *Graham* factors is whether the suspect poses an immediate threat to the safety of the officers or others. *Vos v. City of Newport Beach*, 892 F.3d at 1024, 1031 (9th Cir. 2018). A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

As demonstrated below, the totality of the circumstances clearly indicate that the deadly force used against ANTHONY VARGAS was unreasonable.

**a)  ANTHONY VARGAS was not Involved in the Robbery**

Here, ANTHONY VARGAS was not involved in the robbery so the governmental interest in detaining ANTHONY VARGAS was very low especially because ANTHONY VARGAS did not fit the description in any form.

**b)  ANTHONY VARGAS was Unarmed when he was Shot and was Simply Trying to Run Away**

Ultimately, the "'most important'" *Graham* factor is whether the subject posed an "'immediate threat to the safety of the officers or others.'" *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir.2005) (en banc) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir.1994)). If deadly force is used the officer must have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury."

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A
MATTER OF LAW**

*Tennessee v. Garner*, 471 U.S. 1, 3 (1985). In *Deorle*, the Ninth Circuit explained that when courts consider whether there was an immediate threat, a "simple statement by an officer that he fears for his safety or the safety of others is not enough; *there must be objective factors to justify such a concern*." 272 F.3d at 1281 (emphasis added).

Here, this case is a classical case where Defendant ROJAS and PEREZ provided a self-serving statement that they feared for their safety without objective facts to support such assertion. The objective evidence disproves the false testimony provided by Defendant ROJAS and PEREZ. In fact, all the shots to ANTHONY VARGAS were to the back and came from the back. Even Defendants' own expert, Rocky Edwards, demonstrated that Gunshot Number 13 came from the back of ANTHONY VARGAS. ANTHONY VARGAS was never a threat to Defendant ROJAS and PEREZ.

Furthermore, the physical evidence suggests that ANTHONY VARGAS did not possess a weapon when he was shot, let alone held the weapons as described by ROJAS. While Plaintiff made the strategic decision not to expressly say the firearm found at the scene was planted, Plaintiff made strong inferences that the gun was planted. There are no finger prints on the gun and the gun does not have ANTHONY VARGAS' DNA on it. There is a strong reasonable inference that the firearm is a drop gun or throw down gun which is a firearm that is planted on someone. There is a strong reasonable conclusion based on the evidence that the firearm found at the scene was not ANTHONY VARGAS'.

Accordingly, ANTHONY VARGAS was shot and killed while he was unarmed, and while he was not an imminent threat of death or seriously bodily injury to anyone including Defendant ROJAS and PEREZ.

### c)  ANTHONY VARGAS Albeit Resisting, was not Fighting

The third *Graham* factor "is whether the individual actively resisted arrest or attempted to evade arrest by flight. *Graham*, 490 U.S. at 396. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm from failing to apprehend him does not justify the use of deadly force to do so." *Roderick*, 126 F.3d at

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

1201.

Here, ANTHONY VARGAS' fight or flight mechanism kicked in when he saw Defendant ROJAS and PEREZ and was engaging in fight mode. All that ANTHONY VARGAS did was run away. However, flight in and of itself does not justify deadly force. Defendant ROJAS and PEREZ' failure to apprehend ANTHONY VARGAS does not justify the use of deadly force. *Roderick*, 126 F.3d at 1201.

### d) All Other Factors Weigh in Favor of Defendants Violating ANTHONY VARGAS' Fourth Amendment Right.

If a suspect no longer poses an immediate threat, then the subsequent use of deadly force is unreasonable. *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017). In analyzing reasonableness "[o]ther relevant factors include the availability of less intrusive alternatives to the force employed" and "whether proper warnings were given[.]" *Glenn v. Washington Cty.,* 673 F.3d 864, 872 (9th Cir. 2011).; *see also Rutherford*, 272 F.3d at 1283–84 ("[W]arnings should be given, when feasible, if the use of force may result in serious injury, and...the giving of a warning or the failure to do so is a factor to be considered in applying the Graham balancing test.").

Ultimately, the court must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Hughes v. Kisela*, 862 F.3d 775, 779 (9th Cir. 2016).

Here, analyzing the totality of the circumstances with Defendant ROJAS and PEREZ's deadly use of force violated ANTHONY VARGAS; right to be free from unreasonable seizures was violated.

First, there was no *Garner* warner given. Further, Defendants failed to use less than lethal force options except personal strikes. Next, Defendant ROJAS and PEREZ shot and killed ANTHONY VARGAS without any legal justification. *See Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (if a suspect no longer poses an immediate threat, then the subsequent use of deadly force is unreasonable). The sheer number of shots are excessive and Defendants should not have fired so many

11

shots. Therefore, all other factors point to the use of force used by Defendant ROJAS and PEREZ' being unreasonable and excessive under the totality of the circumstances. Accordingly, Defendants JMOL should be denied.

**B. Defendant Rojas And Perez Are Not Entitled To Judgment As A Matter Of Law On The State Law Claims**

### i. Defendants Committed a Battery

The crux of Plaintiff's battery claim is whether the force used on ANTHONY VARGAS was not necessary to defend human life. *See* CACI 1305B. Plaintiff respectfully refers this Court to the section above regarding the use of force. It is clear that Defendant ROJAS and PEREZ used unreasonable force on ANTHONY VARGAS which also makes them liable for battery under state law.

### ii. Defendants were Negligent

California negligence law requires "a plaintiff [to] show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 684 (2013). Officers are liable "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Id.* California negligence law regarding the use of deadly force overall is "'broader than federal Fourth Amendment law.'" *Id.* (quoting *Villegas ex rel. C.V. v. City of Anaheim*, 823 F.3d 1252, 1257 n.6 (9th Cir. 2016).

Ninth Circuit jurisprudence makes it clear that officers are negligent if their "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021).

Here, the tactics used by Defendant ROJAS and PEREZ prior to the shooting were negligent. It is undisputed that Defendant ROJAS and PEREZ failed to obtain a better description, it is undisputed that Defendant ROJAS and PEREZ failed to surveil and contain the area, it is undisputed that Defendant ROJAS and PEREZ failed to wait

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

1   for back and air support, it is undisputed that Defendant ROJAS and PEREZ violated
2   their foot pursuit policy, and it is undisputed that Defendant ROJAS and PEREZ failed
3   to use less than lethal force options except personal weapons. Such negligence makes
4   Defendant ROJAS and PEREZ liable under Plaintiff's negligence claims.

5   ### iii.  Defendants Violated the Bane Act

6   The California Bane Act protects against interference "by threat, intimidation,
7   or coercion" or an attempt to do the same "with the exercise or enjoyment by any
8   individual or individuals of rights secured by the Constitution or laws of the United
9   States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code
10   § 52.1(a). The Bane Act does not require the 'threat, intimidation or coercion' element
11   of the claim to be transactionally independent from the constitutional violation alleged.
12   *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

13   Here, Plaintiff's instant opposition has demonstrated in the foregoing sections
14   that Defendant ROJAS and PEREZ intended to use threats, intimidation, or coercion,
15   or at the very least attempted to, to interfere with ANTHONY VARGAS' right to be
16   free from unreasonable searches and seizures.

17   As stated in *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018),
18   the "threat, intimidation or coercion" does not have to be independent from the Fourth
19   Amendment violation. The crux of Plaintiffs' Bane Act claim is whether Defendant
20   ROJAS and PEREZ intended to violate ANTHONY VARGAS' rights. As established
21   above, the deputies shot and killed ANTHONY VARGAS while he was unarmed
22   which is evidence supporting Plaintiffs' Bane Act. Furthermore, there is also a
23   reasonableness component to a Bane Act claim, as stated above, the shooting of
24   ANTHONY VARGAS was unreasonable since he was unarmed and surrendering
25   when the deputies shot him. Therefore, Defendants violated the Tom Bane Act.

26   ### C. Defendant Rojas And Perez Are Not Entitled To Qualified Immunity

27   The doctrine of qualified immunity "shields officials from civil liability so long
28   as their conduct does not violate clearly established statutory or constitutional rights of

1   which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11

2   (2015). Because qualified immunity is typically seen as immunity from being sued,

3   courts resolve "qualified immunity as a legal issue before trial whenever possible."

4   *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). However, the issue may carry into

5   trial "[w]hen there are disputed factual issues that are necessary" to resolve whether

6   the defendant is immune. *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019).

7   In such a case, the jury must "decide the disputed factual issues," and then the judge

8   applies the jury's conclusions when determining "the ultimate [legal] question" of

9   immunity. *Morales*, 873 F.3d at 823. When qualified immunity is raised after a verdict,

10   the Court must give "significant deference to the jury's verdict and to the nonmoving

11   part[y]." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Ch. 2013).

12   The second prong of qualified immunity analyzes whether the right was "clearly

13   established" if "in light of the specific context of the case," it would be "clear to a

14   reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*

15   *v. Katz*, 533 U.S. 194, 201-02 (2001). The Supreme Court has instructed courts to

16   see if there are "cases of controlling authority in their jurisdiction at the time of the

17   incident which clearly established the rule on which they seek to rely" or whether there

18   is "a consensus of cases of persuasive authority such that a reasonable officer could not

19   have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999);

20   *See also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Most importantly, where

21   officers' "entitlement to qualified immunity depends on the resolution of disputed

22   issues of fact in their favor, and against the non-moving party, summary judgment is

23   not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).

24   Properly framed and viewing the facts in a light most favorable to Plaintiff,

25   which are facts supported by physical evidence, the question this Court asks is if the

26   law was clearly established that it was unreasonable for Defendant ROJAS and PEREZ

27   to use deadly force on ANTHONY VARGAS who was running away and was unarmed

28   when he was shot. Accordingly, there are at least twenty-three (23) cases which clearly

14

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

established that officers cannot shoot an unarmed person, they are as follows:

2.     In *Longoria v. Pinal County*, 873 F.3d 699, 708 (9th Cir. 2017), Ninth Circuit reversed the grant of qualified immunity and held that a reasonable jury could find the officer "never perceived a 'shooter's stance,' and that [he] knew or should have known that Longoria was either surrendering in response to the non-lethal force of the [less-lethal] rounds and taser or reacting in some manner to their effects upon him but was by no means threatening to shoot at [the officer] or any of the other officers."

3.     In *S.R. Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019), cert. denied *Browder v. Nehad*, 141 S. Ct. 235 (2020), Ninth Circuit reversed district court's grant of qualified immunity where a man was walking aggressively towards an officer prompting the officer to shoot because he allegedly perceived a pen as a knife.

4.     In *Glenn v. Washington Cty.*, the Ninth Circuit held that a reasonable jury could find a constitutional violation where officers shot an individual holding a pocket knife that he "did not brandish at anyone." 673 F.3d 864, 873 (9th Cir. 2011).

5.     In *Deorle v. Rutherford*, the Ninth Circuit held that the threat to an officer was minimal where the suspect approached the officer with a bottle or can in his hand but the officer knew backup was on the way, had a "clear line of escape," and did not consider other, less dangerous methods of stopping the suspect. 272 F.3d 1272, 1280-83 (9th Cir. 2001).

6.     In *Curnow By & Through Curnow v. Ridgecrest Police*, the Ninth Circuit held that the officers were not entitled to qualified immunity where the individual had picked up a rifle but did not point it at the officers and was not facing them when he was shot. 952 F.2d 321, 323-25 (9th Cir. 1991).

7.     In *Estate of Lopez by & through Lopez v. Gelhaus*, the Ninth Circuit stated that *Curnow* gave "fair notice" that the use of force is unreasonable where "the victim does not directly threaten the officer with the gun." 871 F.3d 998, 1020 (9th Cir. 2017).

8.     In *George v. Morris*, 736 F.3d 829 (9th Cir. 2013), no qualified immunity if Decedent had their gun trained at the ground not at deputy; clearly established in

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

1   2013 possession of a gun not pointed at anyone alone does not justify deadly force.

2       9.      In *Espinosa v. City and County of San Francisco*, 598 F.3d 528 (9th Cir.

3   2010), MSJ based on qualified immunity denied and affirmed on appeal where officer

4   mistakenly shot decedent in a dark attic because they moved their arm and thought they

5   saw gun in hand; decedent was unarmed.

6       10.     In *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1227-1234 (9th Cir. 2013),

7   Officers saw Hayes in kitchen about eight feet away and took a step or two toward

8   officers with large knife with point tipped down and both officers immediately shot

9   Hayes. District Court held deadly force reasonable as a matter of law; Ninth Circuit

10  reversed, and recognized that while "threatening an officer with a weapon does justify

11  the use of deadly force," there was "no clear evidence ... that Hayes was threatening

12  the officers with a knife . . ."

13      11.     In *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014), where a

14  man who earlier had a weapon but allegedly had left it in the vehicle he was exiting,

15  no Qualified Immunity and there were triable issues on excessive force when deadly

16  force is used.

17      12.     In *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017), Ninth

18  Circuit reversing district court who granted summary judgment after force was used on

19  a subject who no longer posed a threat.

20      13.     In *Harris v. Roderick,* 126 F.3d 1189, 1203-1204 (9th Cir. 1997), use of

21  deadly force unreasonable when suspect makes no aggressive or threatening

22  movement, despite having allegedly engaged in shoot-out with officers the prior day.

23      14.     In *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017), finding

24  triable issue where decedent was armed with a knife.

25      15.     In *Ting v. United States*, 927 F.2d 1504, 1501 (9th. Cir. 1991), MSJ on

26  Qualified Immunity reversed including on evidence of bullet trajectories.

27      16.     In *N.E.M. v. City of Salinas*, 761 F. App'x. 698, 699–700 (9th Cir. 2019),

28  the Ninth Circuit affirmed denial of qualified immunity to officers who shot garden

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

shear-wielding person when he turned toward officers less than nine feet away, after having swung shears at officers.

17.     In *Estate of Kosakoff ex rel. Kosakoff v. City of San Diego*, 460 F.Appx. 652, 654 (9th Cir. 2011), Ninth Circuit affirmed denial of qualified immunity on excessive force claim because, if jury were to find plaintiff "posed no significant threat[,]" fact that deadly force employed by officers was unconstitutionally excessive would be "obvious as a matter of law." (internal quotation marks omitted).

18.     In *J.L.D. v. City of Los Angeles*, 555 F.App'x 670, 671 (9th Cir. 2014), reversing summary judgment where the officer's testimony as to the number of shots and the location of the shots was directly contradicted by the medical evidence and the report of the plaintiff's expert.

19.     In *Jefferson v. Lewis*, 594 F.3d 454, 458 (6th Cir. 2010), MSJ denied and no qualified immunity for officer who mistakenly thought he saw muzzle flash and person's arm extended, and mistakenly thought a doorknob in hand was a gun.

20.     In *Floyd v. City of Detroit*, 518 F.3d 398, 404-405 (6th Cir. 2008), Denial of MSJ based on qualified immunity affirmed where officer mistakenly perceived handgun because plaintiff's arm extended and shot the plaintiff.

21.     In *I.A. v. City of Emeryville, et.al.*, 15-CV-04973-DMR, Decided March 13, 2017 U.S. Dist. Ct. Northern Dist, MSJ on Qualified Immunity denied where suspect had gun but other evidence disputed Officers' claim suspect aimed her gun at officer and when suspect shot, alternative methods to take into custody were available.

22.     In *Ellis v. Wynalda*, 999 F.2d 243, 246-248 (7th Cir. 1993), Officer shot Plaintiff in the back after Plaintiff threw objects that hit Officer. Qualified Immunity MSJ granted by District Court reversed.

23.     In *Fancher v. Barrientos*, 723 F.3d 1191, 1199-1201 (10th Cir. 2013), no Qualified Immunity for additional shots fired after threat has passed.

24.     In *Rivers v. Bowers*, 2008 U.S. Dist. LEXIS 39558 (S.D. Ohio May 15, 2008), no qualified immunity for firing shots after the threat has passed.

17

Accordingly, based upon the foregoing cases, it was clearly established at the time force was used that shooting an unarmed man was unconstitutional thereby, preventing the grant of qualified immunity.

## V.    CONCLUSION

Based upon the foregoing, Defendants' motion should be denied.

DATED: April 19, 2023                    **GUIZAR, HENDERSON & CARRAZCO, LLP**

By: _____
    HUMBERTO GUIZAR
    CHRISTIAN CONTRERAS
    Attorneys for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff certifies that this brief contains 5,756 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 19, 2023                    **GUIZAR, HENDERSON & CARRAZCO, LLP**

By: _____
    HUMBERTO GUIZAR
    CHRISTIAN CONTRERAS
    Attorneys for Plaintiff

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**